## Hocking *v.* Hamilton et al., Appellants.

[Marked to be reported.]

158   107
f196 286
158      107
20 SC ⁴295

*Contract—Partnership—Agent—Ratification.*

A contract for the purchase of coal was signed by the senior member of a firm in his own name, to which he added a seal. The coal referred to in the contract was shipped to the firm and received by it. The manifests were made in the firm name, and the coal was paid for by firm checks. *Held,* that there was sufficient evidence to find that the firm had ratified the contract, and accepted its terms and conditions.

*Contract—Duty to furnish cars.*

Where a vendor of coal undertakes to sell and deliver coal free on board railroad cars at the tipple at a designated price, and the vendee covenants to receive it there and pay for it, the vendee is bound to furnish the cars, and if he fails to do so, and the vendor is thereby prevented from delivering the coal on cars, the vendee is liable in damages for nonperformance of his contract.

*Contract—Breach—When right of action accrues.*

If before the time for the performance of a contract has arrived, one party announces to the other that he does not intend to perform his promise, the latter may treat the contract as broken, and bring an action immediately against the former for the breach. It is not necessary that he should postpone his suit until time for performance has arrived.

Argued Oct. 12, 1893.   Appeal, No. 147, Oct. T., 1893, by defendants, S. M. Hamilton et al., trading as S. M. Hamilton & Co., from judgment of C. P. Somerset Co., Feb. T., 1890, No. 98, on report of referee in favor of plaintiffs, John T. Hocking et al., trading as the Hocking Coal Co.   Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL, DEAN and THOMPSON, JJ.

Assumpsit for breach of contract to purchase coal.

The case was referred to H. L. Baer, Esq., as referee.

The material portions of the contract, signed and sealed by the parties named, were as follows:

" This agreement, made and entered into this third day of December, eighteen hundred and eighty-seven, between S. Marland Hamilton, of the city of Baltimore, and state of Maryland, of the first part, and Hocking Coal Co., John T. Hocking, of Meyersdale, and state of Pennsylvania, of the second part, witnesseth:

"1st. The party of the first part agrees to buy and take from the party of the second part fifty thousand tons of coal mined at the mine known as the Hocking mine and shipped as hereinafter specified from the date hereof to Jan. 1, 1889.   Said quantity of coal to be shipped in monthly instalments of about four thousand tons per month, and the party of the second part hereby agrees to mine and ship to said party of the first part said quantity of fifty thousand tons as aforesaid.   And it is further agreed that the party of the second part shall not, during the continuance of this contract, sell, give, deliver or ship to any person or corporation other than the party of the first part, any coal

except upon the written order of said party of the first part, and in case party of the second part should sell, give, deliver or ship any coal to any person or corporation other than party of the first part or on his written order, then the party of the second part shall owe and pay to the party of the first part the sum of one thousand dollars for every such shipment or sale, as liquidated damages for the breach of this stipulation. The party of the second part, however, shall be at liberty to supply what is known as the farm and home trade by deliveries in wagons or carts at the mine, said trade not to be supplied by shipments by rail, except on the written authority of the party of the first part. In case the party of the second part shall be able to mine and ship more than the above mentioned quantity of fifty thousand tons of coal, then the party of the first part shall be entitled to purchase all or a part of such excess at the same price and on the same terms as is hereinafter named for said fifty thousand tons, but it is understood that no coal mined in excess of said fifty thousand tons shall be sold by party of the second part to any person or corporation other than party of the first part. Party of the second part, however, has the right to sell to Balto. & Ohio R. R. Co. for its own use.

"2d. It is agreed that the price to be paid party of the second part by party of the first part shall be for all good clean marketable coal free on board railroad cars at tipple, as follows, that is to say, in hoppers and gondolas for run of mine coal sixty-eight (68) cents per ton of 2240 lbs.

"3d. Weight to be taken in settlement for coal to be Balto. & Ohio R. R. Co. Sand Patch weight. It being fully understood and agreed that party of the second part shall place on each car a weight of coal not less than the capacity as marked on said car.

"4th. Settlement for coal shipped shall be made monthly; that is to say between the 10th and 18th of each month, party of the first part is to remit check to party of the second part for all coal shipped party of the first part by party of the second part in the previous month.

"7th. In the event of miners' strikes, labor difficulties, accidents or stoppage of supply of cars from any cause other than that party of the first part having too heavy stock of coal in cars at Locust Pt., the quantity of coal to be shipped by the party of

the second part to be taken by the party of the first part shall be reduced in proportion to the time during which such strike or other obstructions shall continue to exist.

" 9th. It is understood and agreed that the party of the second part shall mine and ship only good clean black coal ordinarily free of rust and slate, and for each and every car of coal shipped that contains a quantity of rust or slate to affect its marketable appearance or value party of the first part has the right to reject same at destination and charge party of the second part all expenses of transportation on such car or cars of coal, or should the inferior quality of the coal not be noticeable till car is being unloaded, then the party of the second part shall accept a reduced price for such inferior coal."

S. Marland Hamilton was at the time of making this agreement and now is a member of the firm of S. M. Hamilton & Co., composed of the following persons, namely : Silas M. Hamilton, Benj. Wallis and S. Marland Hamilton. Their place of business was in the city of Baltimore, and they were then and now are engaged in the business of shipping coal to different points along the Atlantic seaboard and elsewhere. Plaintiff was engaged in the business of mining and shipping coal in the Elklick coal region in Somerset county, Pennsylvania, under the name of the Hocking Coal Company.

Prior to the making of the agreement, defendants sent out circulars to different operators in this region, proposing to make contracts with them, and these different operators were met by S. Marland Hamilton.

Under the agreement defendants from time to time ordered coal from plaintiff, always designating the kind of cars to be used and the place to which the coal was to be sent. For the coal thus shipped, monthly remittances were made by checks of the firm. On March 18, 1888, plaintiff wrote to defendants, claiming $815.80 shortage by reason of deficiency in tonnage up to that time, to which defendants replied under date of 22d of same month that the claim was erroneous. In July, 1888, defendants in their correspondence commenced to complain about the price of coal, and requesting a reduction in the price to 65 cents per ton.

There was evidence to the effect that defendants agreed to and did order the cars of the railroad.

On Aug. 13, 1888, defendants notified plaintiff that they would decline to receive any more coal under the contract, and plaintiff could therefore sell to other parties, but if they needed coal from him they would order from time to time.

On Aug. 30, 1888, S. Marland Hamilton wrote plaintiff: "Please take note that I do not recognize any contract or agreement with you, and have and will continue to authorize S. M. H. & Co. to buy wherever they can buy the cheapest the best coal and get prompt shipment."

On Sept. 1, 1888, he wrote: "We can take care of all the hoppers you can load next week for Locust Pt. Nothing but best Hocking Mine coal, bear in mind, and price 68c."

Defendants did at various times subsequently order coal from plaintiff, for all of which they paid, except the shipments of December, 1888.

This action was brought Jan. 8, 1889, to recover the amount due plaintiff for coal shipped in December, 1888, and for damages for shortage under the written agreement.

The referee found that defendants ratified the contract and that it was terminated before suit brought. He found in favor of plaintiff for $5,287.51.

Exceptions by defendants to the referee's findings were dismissed by the court, LONGENECKER, P. J., and judgment entered. Defendants thereupon appealed.

*Errors assigned* were dismissal of exceptions, quoting them.

*W. H. Koontz, H. S. Endsley* with him, for appellants.—"If an agent sign and seal a deed in his own name, it does not bind his principal, though it purport to be made between the other party and the principal by such agent, nor will any confirmation by the principal short of sealing the deed render him liable on it; and as the one party is not bound, so neither is the other:" Bellas v. Hays, 5 S. & R. 427; Heffernan v. Addams, 7 Watts, 116; Stone v. Wood, 17 Am. Dec. 529; Clealand v. Walker, 46 Am. Dec. 238; Strichfield v. Little, 10 Am. Dec. 238; Merchants' Bank v. Central Bank, 44 Am. Dec. 665; Locke v. Alexander, 11 Am. Dec. 750; Brinley v. Mann, 48 Am. Dec. 669; Fisher v. Salmon, 54 Am. Dec. 297; Henderson v. Martin, 70 Am. Dec. 606; City of Providence v. Miller, 23 Am. R. 453.

The contract expressly puts upon plaintiff the duty of "mining and shipping." This includes necessarily the furnishing of cars.

In Kunkle v. Mitchell, 56 Pa. 100, the point of delivery was Indiana station, but in this case, the point of delivery was such points as would be designated by Hamilton. The settlement was to be according to the weight at Sand Patch station. So, also, in Dwight v. Eckert, 117 Pa. 508, the delivery was to be free on board the cars.

This case is analogous to a time note, on which suit cannot be brought until the time for payment has elapsed, or to a case of suit on a policy of insurance which cannot be maintained until the time fixed for payment: Ins. Co. v. Hocking, 115 Pa. 407.

Where neither party has insisted on a strict performance of a continuing contract, it is not competent for one of them to rescind without notice of an intention to insist on a literal compliance: Forsyth v. North Am. Oil Co., 53 Pa. 168; McDowell's Ap., 123 Pa. 381; Ins. Co. v. McAden, 109 Pa. 399; Taylor v. Saurman, 110 Pa. 3.

*W. H. Ruppel, A. H. Coffroth* and *John Cessna* with him, for appellee.—Defendants are liable under the agreement: Shollenberger v. Seldenridge, 49 Pa. 83; Swisshelm v. Swissvale Laundry Co., 95 Pa. 367; Hall v. White, 123 Pa. 95.

If goods are delivered to a common carrier, property would pass, as the carrier would be the agent of the vendee: Landreth's Analysis of Sale, 47; Com. v. Fleming, 130 Pa. 138.

The question of liability to furnish cars is settled by Kunkle v. Mitchell, 56 Pa. 100, and Dwight v. Eckert, 117 Pa. 490.

Parol agreement to furnish cars was admissible: 2 Whart. Ev. § 1015; Miller v. Fichthorn, 31 Pa. 260; Volkenand v. Drum, 154 Pa. 616.

Where two persons enter into a contract, and after part performance by one the other denies its existence, and gives notice of his intention to disregard it, the party not in default may at his option perform fully and enforce the contract, or consider it at an end and recover for part performance: Moorhead v. Fry, 24 Pa. 39. See also, Seipel v. International Life Ins. & Trust Co., 84 Pa. 47; Stewart v. Short, 130 Pa. 395; Camp-

bell v. Gates, 10 Pa. 483; 3 A. & E. Enc. L., pp. 903–4, note, 907, note 2.

OPINION BY MR. JUSTICE THOMPSON, Oct. 30, 1893:

Appellants rest their defence to this action, which was brought to recover damages for nonperformance of a contract and for the price of coal delivered, upon the grounds that the contract was not executed by appellants' firm, that under it they were not bound to furnish cars to appellee, for shipment of coal, and that when suit was brought the cause of action had not accrued.

Appellants, on November 21, 1887, wrote to appellee as follows: " We are about consummating our arrangements for a supply of coal for the year 1888, and in looking over the field open to us wish to see the arrangements we can make.   We have already been asked to consider a proposition from the largest West Virginia Coal Company, and there are several companies on the Creek that will be pleased to enter into arrangements with us, one to take its entire output, and the other to supply our requirements of coal.   Besides, we are considering the advisability of opening up our Withers mine on Georgia Creek.   Before concluding we wish to know if you are disposed to make a bona fide contract with us for 1888 for the entire output of your mine, we guaranteeing same to exceed quantity to be required to be taken out according to the present term of your lease and on which you have to pay royalty." Subsequently, in pursuance of this letter, S. M. Hamilton, one of appellants' firm, met appellee.   At this meeting there were present other coal operators, with whom contracts were made to take their coal at seventy cents per ton; but appellee declined to make any contract unless the amount to be taken by appellants would be sufficient to provide for the royalty he was required to pay under his lease.   Finally, after some negotiation, it was agreed substantially that appellee would sell fifty thousand tons for what would yield him sixty-eight cents per ton.   A memorandum was taken to Baltimore, where the agreement was finally prepared, and signed by S. M. Hamilton and sent to appellee, who signed it.   Although so signed by S. M. Hamilton it was in fact made for appellants' firm.   The referee so finds and the evidence clearly warrants his finding.   The shipment of the coal to them, the manifests made in their name, the checks and

their letters, demonstrate that such was the fact.    S. M. Hamilton, acting for the firm, made the contract in question, and his act in so making it beyond doubt has been ratified and confirmed by the firm.    The evidence justifies the master in finding that " said firm ratified the said contract and accepted the terms and conditions thereof."    It was therefore the contract of appellants' firm.

In Swisshelm v. Swissvale Laundry Co., 95 Pa. 370, it is said : " Schoyer was acting as agent under parol authority, and his seal is surplusage, being in excess of his authority : Schmertz v. Shreeve, 12 P. F. Smith, 457.    Having but a parol authority, had he signed his principal's name, adding a seal, assumpsit would lie against the principal:  Jones v. Horner, 10 P. F. Smith, 214.    Where one accepts a deed containing an agreement on his part, but without affixing his signature and seal, he may be sued in assumpsit for a breach of it : Pratt v. Harding, 6 Casey, 525.    On the undisputed facts no one is liable in covenant but Schoyer, and the defendant may be properly sued in assumpsit."    In Hall v. White, 123 Pa. 105, it is said : " The articles of agreement upon their face are between the plaintiffs as vendors and the Mercer Mining and Manufacturing Company as vendee.    If this were all there would be nothing to connect the defendant below with the contract.    The jury have found, however, and upon abundant evidence, that the Mercer Mining and Manufacturing Company were but the agents of the defendant; that they negotiated the transaction for him, and that in pursuance thereof he entered into the land and made certain improvements thereon.    Under such circumstances it is hornbook law that the vendors had a right to sue the principal for whose benefit the contract was made."

As the present action is in assumpsit it may be said that even if this contract had been executed as contended, it has been so ratified and confirmed by appellants as to support this action. Assuredly, by reason of it, and of such ratification and confirmation, there was a mutuality as to remedies.

Appellants contend that even conceding the contract binding upon them, they are not liable because they were not required to furnish appellee the cars for the shipment of the coal.    Appellee sold to them his entire output of fifty thousand tons and covenanted not to sell to any other person or corporation, ex-

cepting, however, farm and other trade by delivery at the mines. It is not denied that he was ready and willing to deliver the coal there. But as cars were not furnished to him he did not do so. Appellants claim, however, that he was bound to furnish cars and to deliver coal upon them, and having failed to do so he was not entitled to recover in this action. The contract provides: "It is agreed that the price to be paid to the party of the second part by party of the first part shall be for all good, clean merchantable coal free on board railroad cars at tipple, as follows, that is to say, in hoppers and gondolas, for run of mine coal, sixty-eight cents per ton of twenty-two hundred and forty pounds." The point of delivery to defendants was to be upon the cars at the tipple; and the fact that settlement was to be made according to the weight at Sand Patch did not change it. This is emphasized by the covenant that appellee shall place on each car "a weight of coal not less than the capacity as marked on said car." After the delivery at that point the distribution of the cars necessarily passed to appellants. The appellee undertook to sell and deliver at the tipple the coal at the designated price; and the appellants covenanted to receive it there and pay for it. If so, they were bound to furnish the cars for it, and the appellee was required to be ready and willing to deliver it there. As he was so prepared, and as the latter neglected and refused to receive it, they became liable in damages for the nonperformance of their contract.

In Kunkle v. Mitchell, 56 Pa. 100, it is said: "The article of agreement between plaintiff and defendant is dated December 27, 1862, by which the defendant Mitchell agreed to deliver on the cars at Indiana 75,000 feet of lumber at eighty-five cents per 100 feet. This is the controlling clause as to the place of delivery. The cars would be either the cars of the plaintiff or those of the railroad company. In either case they were to be provided by the plaintiff and not by the defendant. The cars therefore being to be provided by the plaintiff, the duty was imposed upon him to see that he was at least ready with the cars or willing to provide them, and to have notified the defendant of such readiness and willingness." And in Dwight v. Eckert, 117 Pa. 508, it is said: "It is a well established principle of law that in a contract for the sale and delivery of goods 'free on board vessel,' the seller is under no

obligation to act until the buyer names the ship to which the delivery is to be made."

If this agreement was susceptible of a doubt in its construction in regard to appellants' duty to furnish cars, the evidence of appellants' actions clearly resolves such doubt against them. The appellee was therefore entitled to recover if at the time of bringing suit his right of action had accrued.

In appellee's statement of his demand, after his claim for damages, he adds one for the delivery of 3,701 and a fraction tons of coal in December, 1888. It is contended that under the contract the payment for this coal was not due until after the suit was brought. The referee finds as a fact that the appellants notified appellee that in August, 1888, the contract was terminated, and this finding is sustained by the evidence. As the contract was thus terminated prior to the suit, the appellee's right of action to recover not only damages, but the price of coal subsequently furnished, accrued.

In Campbell v. Gates, 10 Pa. 483, it was held that one party having by letter refused to go on with the performance of the contract, the right of action for damages then accrued to the other party. In Lovell v. Ins. Co., 111 U. S. 264, it is said by Mr. Justice BRADLEY: "Where one party to an executory contract prevents the performance of it, or puts it out of his own power to perform it, the other party may regard it as terminated and demand whatever damage he has sustained thereby." And in Am. & Eng. Encyclopedia of Law, vol. 3, page 904, it is stated: "If before the time for the performance of a contract has arrived, one party announce to the other that he does not intend to perform his promise, the latter may treat the contract as broken and bring an action immediately against the former for the breach. It is not necessary that he should postpone his suit until the time for performance has arrived."

As the contract was that of appellants, and as, by their refusal to perform, appellee was entitled to recover, as the damages as found by the master were warranted by the evidence, and as the right of action had accrued at the time when the suit was brought, this judgment is affirmed.