## DAVIS et al. v. ALPHA PORTLAND CEMENT CO.

## ALPHA PORTLAND CEMENT CO. v. DAVIS et al.

### (Circuit Court of Appeals, Third Circuit. January 8, 1906.)

#### Nos. 3, 4.

1. SALE—CONSTRUCTION OF CONTRACT—PRACTICAL CONSTRUCTION BY PARTIES.

Where, in the performance of a contract by which defendant sold to plaintiff a large quantity of cement to be delivered throughout a year "all in car load lots f. o. b." shipments to be made at any time within 10 days after the receipt of orders, defendant uniformly obtained the cars, and made no claim that it was plaintiff's duty to furnish the same, such course of dealing amounted to a practical construction of the contract as imposing such duty on defendant, by which it was bound.

[Ed. Note.—For cases in point, see vol. 11, Cent. Dig. Contracts, § 753.]

2. SAME—BREACH OF CONTRACT—MEASURE OF DAMAGES.

A contract made by letter for the sale of 200,000 barrels of cement, to be delivered during a year, contained stipulations on the part of the seller: "We will pay you 15c. per barrel as liquidated damages for each and every barrel short of the 200,000 barrels; and we agree to make all shipments to you within ten days after receipt of orders." *Held*, that such clause was valid and furnished the only measure of the damages recoverable by the purchaser for nondelivery, whatever might be the rule of damages were the claim merely for delay in filling orders afterward shipped.

[Ed. Note.—For cases in point, see vol. 43, Cent. Dig. Sales, § 1187.]

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

For opinion below, see 134 Fed. 274.

J. Warren Coulston and John G. Johnson, for plaintiffs.

Pennell C. Evans, Wm. A. Glasgow, and Alexander Simpson, Jr., for defendant.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

ACHESON, Circuit Judge. In the court below James A. Davis and Henry N. Fisher, copartners, trading as James A. Davis & Co. brought an action against the Alpha Portland Cement Company, a corporation of the state of New Jersey, to recover damages for the breach by the defendant of a contract, evidenced by letters, whereby the plaintiffs agreed to purchase from the defendant and the defendant agreed to deliver to the plaintiffs certain Alpha Portland Cement, manufactured by the defendant at Alpha, N. J. The first of the letters, which was dated December 21, 1901, and was from the Alpha Portland Cement Company, the defendant, to James A. Davis & Co., the plaintiffs, contains the following clauses, which by acceptance became parts of the contract:

"In consideration of our agreeing to give you the exclusive sale of our Alpha Portland Cement in the New England states during the year 1902, you agree

to purchase from us, 200,000 barrels of such cement at the following special prices, viz.:

Alpha Portland Cement 87½c. per bbl. in cotton.
"     "     " $1.10    "   "   "   wood.

"All in car load lots f. o. b. Alpha, N. J. Terms 2% off cash in ten (10) days.

"We agree to deliver to you the above mentioned quantity of cement at the prices named, same to be ordered out monthly about as follows:" [Here follows a schedule of the amounts to be ordered in the several months of the year 1902.]

"It is further understood and agreed that in the event we should fail to deliver the 200,000 barrels of cement during the year 1902, barring strikes, fires and accidents or causes beyond our control, we will pay you 15c. per barrel as liquidated damages for each and every barrel short of the 200,000 barrels; and we agree to make all shipments to you within ten (10) days after receipt of orders, providing you do not call for shipment of more than 1,000 barrels in wood and 3,000 barrels in cotton per day.

"In the event you do not order from us the 200,000 barrels during the year 1902, it is understood and agreed that you will pay us 15c. per barrel as liquidated damages for each and every barrel short of the 200,000 barrels."

## At the trial the jury rendered the following special verdict:

"The jury finds a verdict for the plaintiff for the sum of $88,150.14, with leave to the court to reduce the verdict to $19,243.52, if the court shall be of opinion that under the contract plaintiff should only be allowed to recover 15 cents per barrel as liquidated damages."

The court reserved the question "whether there is any evidence to go to the jury in support of the plaintiffs' claim." Subsequently the court reduced the verdict to the sum of $19,243.52, and entered judgment in favor of the plaintiffs for that amount. And thereupon each side sued out a writ of error to the judgment.

The assignments of error on the one side and the other present for decision two main questions: First, whether the plaintiffs were entitled to recover at all; and, second, if so, for how much should judgment in their favor have been entered. We will treat these questions in the above order.

The Alpha Portland Cement Company, the defendant below, maintains that James A. Davis & Co., the plaintiffs below, under the contract in suit, were required to furnish the cars on board which the defendant was required to deliver the cement, and that as the plaintiffs admittedly did not furnish cars they could not recover in this action. It is not claimed that the plaintiffs expressly bound themselves to furnish cars, but that the contract imports such an obligation under the cases which hold that, where a contract is made by which the seller of goods agrees to deliver them free on board railroad cars at a certain place, it is the duty of the buyer to provide the cars. Kunkle v. Mitchell, 56 Pa. 100; Hocking v. Hamilton, 158 Pa. 107, 27 Atl. 836. The plaintiffs, however, contend that the principle of that class of cases does not apply where the contract, as is the case here, is for the purchase of cement "all in car load lots f. o. b." and the seller is to make shipments at any time within 10 days after the receipt of orders, and that as the subject-matter of purchase is cement "in car load lots f. o. b." the reasonable meaning of the contract is that the seller is to secure the cars and load the same upon receipt of shipping orders.

The court below held that the parties by their uniform course of dealing had put a practical interpretation upon the contract in accordance with what the plaintiffs contend is its true meaning, and the court gave effect to that practical interpretation. Speaking of the course of dealing the court, in its opinion, correctly said:

"The defendant was making frequent shipments in fulfillment of the plaintiffs' orders, but always obtained the cars itself, never asking the plaintiffs to furnish them; and, although in frequent correspondence concerning its failure to ship promptly, never alluding to any such duty as if it rested upon the plaintiffs."

The plaintiffs never furnished cars. From first to last the defendant assumed and discharged the duty of obtaining cars. We agree with the court below that the course of dealing between these parties convincingly shows that it was well understood by both parties that under the contract the duty of obtaining cars rested upon the defendant. It was competent for the court below, we think, to receive and give effect to evidence showing that the parties by a uniform course of dealing had put a practical interpretation upon their contract. We find nothing in the language of the contract requiring the exclusion of such evidence. In the case of the District of Columbia v. Gallaher, 124 U. S. 505, 8 Sup. Ct. 585, 31 L. Ed. 526, it was held by the Supreme Court that when, in the performance of a written contract, both parties put a practical construction upon it which is at variance with its literal meaning, that construction will prevail over the language of the contract.

Under the second above-recited clause of the contract the court, as we have seen, reduced the verdict from $88,150.14 to $19,243.52, and entered judgment for the plaintiffs for the latter sum, which is based upon 15 cents per barrel as liquidated damages for each and every barrel short of the 200,000 barrels. The plaintiffs excepted to this action of the court, and here assign the same as error. The validity of the clause respecting liquidated damages is not questioned, but its construction is the subject of dispute. The plaintiffs contend that there were two covenants contained in the clause: (1) To deliver the 200,000 barrels of cement during the year 1902, the same to be ordered out monthly as provided; and (2) to make shipments, if ordered monthly, within 10 days after receipt of orders—and they maintain that the stipulation for liquidated damages applied only to the first covenant, viz., that to deliver the total quantity specified during the year, and that it did not apply to the second covenant; i. e., the agreement to ship within 10 days after the receipt of orders. And the plaintiffs' contention is summarized thus:

"Upon acceptance from time to time by the cement company of orders, it became bound to deliver the same without any limitation upon the amount of damages recoverable in case of failure."

We are not able to assent to this proposition. Had there been a claim for damages arising, not from a failure to deliver, but merely for unjustifiably delayed shipments, ultimately made, we could see how an allowable claim for damages might have arisen not controlled by the standard of damages laid down in the contract for failure to deliver. But no such claim for damages is made here. The plaintiffs'

claim concerns cement never delivered at all. The provision of the contract as to liquidated damages specifically covers this contingency of out and out nondelivery. No shipments of the cement in question having been made at all, of course the cement was not delivered within 10 days; yet, being ultimately undelivered, it came squarely within the stipulation "15c. per barrel as liquidated damages for each and every barrel short of the 200,000." Enforcing their view of the stipulation for liquidated damages, the plaintiffs say:

"It was, therefore, within the power of the defendant to protect itself by refusal to accept orders against any damages in excess of those liquidated. In case of such failure to accept, it would not bring itself within the second covenant."

The vice of the argument for the plaintiffs on this branch of the case, as it seems to us, is the erroneous assumption that the defendant was under the contract free to accept or reject orders. On the contrary, it was bound from and immediately upon the making of the contract to make deliveries upon receipt of orders as specified in the contract. Its original engagement as expressed in the contract was an acceptance, and no further acceptance from time to time of orders was contemplated or justifiable under the contract.

The unsoundness of the argument for the plaintiffs further appears from the following consideration: The plaintiffs contend for damages measured by the difference between the contract price and the market value at the end of a given 10 days' default. Now, there are surely not two measures of damages. If, then, the damages claimed are to be allowed, what becomes of the standard laid down by the contract? It seems to us that, if the plaintiffs' contention is to prevail, their measure of damages will apply to all failures to make shipments, for a shipment never made is not made at the end of 10 days; and hence there would never be any instance in respect of which the parties' standard of 15 cents per barrel would be applicable.

It only remains for us to consider whether, as alleged by the plaintiffs, the parties entered into a new arrangement in the fall of 1902, concerning the delivery of cement, whereby the defendant became responsible for damages for the breach thereof without limitation. Evidence of such a modification of the contract, the plaintiffs claim, is to be found in letters which passed between the parties in the months of September, October, and November, 1902. It would subserve no good purpose to reproduce that correspondence in this opinion. We content ourselves, then, with saying that, as it seems to us, these letters did not make a new contract or modify the existing one. Some confusion had arisen about orders and shipments, and the correspondence in the fall of 1902 resulted in a cancellation of outstanding orders and the substitution of other orders to be filled under the contract. More than this we think was not intended or effected.

We find no error in this record, and therefore the judgment is affirmed.