## Immel *v.* Herb, Appellants.

*Contract—Vendor and vendee—Covenant—Breach of covenant—Statute of frauds—Partnership.*

1. In an action of assumpsit against an individual and an administrator for breach of a covenant made, when the plaintiff bought a dwelling house, that a foundry located on adjoining land owned by the defendants should be removed within two years, a verdict and judgment against both defendants will be sustained where the individual defendant in his testimony admits that the dwelling house in question was built by him and the administrator's decedent with other houses as a partnership transaction, and it appears that the individual defendant made the oral covenant for the breach of which the suit was brought. Such covenant is not within the statute of frauds.

*Practice, C. P.—Premature action—Pleading—Plea of abatement.*

2. Where an action is brought to recover damages for a breach of a covenant to remove a foundry within two years from a lot adjoining a dwelling house bought by the plaintiff from the defendants, the defendants cannot, at the trial, set up as a defense that the suit had been brought prematurely before the expiration of the two years, if it appears that they filed no plea in abatement, but pleaded the general issue, and it also appears from the testimony produced at the trial that they had executed a lease of the foundry, which put it out of their power to comply with the agreement to remove it within two years.

*Contract—Covenant—Breach of covenant—Damages—Vendor and vendee.*

3. In an action for a breach of covenant to remove a foundry within two years from a lot adjoining a dwelling house bought by the plaintiff from the defendants, where the case does not come on for trial until after the expiration of the two years and until after the foundry has been in fact removed, the measure of damages is the loss which the plaintiff sustained by reason of the operation of the foundry during the

period of the continuance of the breach of the contract.  In such a case the jury may take into consideration any physical injury to the property by sulphur fumes, smoke and ashes, as well upon the rental value of the property; but it is error to permit the jury to measure the damages by taking into consideration the difference between the market value of the property with the foundry in operation and with it removed.

Argued Nov. 15, 1911.  Appeal, No. 189, Oct. T., 1911, by defendants, from judgment of C. P. Berks Co., Aug. Term, 1907, No. 60, on verdict for plaintiff in case of George W. Immel v. H. John Herb and Charles H. Shaaber, Administrator of Jacob Shaaber, deceased.  Before Rice, P. J., Henderson, Morrison, Orlady, Head, Beaver and Porter, JJ.  Reversed.

Assumpsit for breach of contract.  Before Endlich, P. J. See 43 Pa. Superior Ct. 111.

The court charged in part as follows:
[You remember that the property belonged to both and that Herb was doing the selling in this particular instance.  If from that and all the other circumstances in the case bearing upon this question the jury believe that he was acting with Shaaber's consent and that what he said he said by Shaaber's consent and for him, then Herb's promise, if he made any, might be looked upon by the jury as the promise of both Herb and Shaaber.] [2]
[If, however, there was an injury to him, then the plaintiff would be entitled to damages, and the measure of those damages would be what is necessary to make him whole, to put him in the same position as he would have been in had the promise been exactly fulfilled.  That would be the difference in the value of the property as it was and as it would have been had the contract been performed as made, if made, together with interest from the time when the contract, if there was one, was broken,—taking into consideration, however, the fact that since the early part of this year the foundry business has been stopped and

the foundry, at least in part, dismantled, and giving to that fact such effect upon the value of the plaintiff's property as you think it entitled to, remembering that the object to be kept in view is to make the plaintiff whole, not to punish the defendants but to make the plaintiff whole.] [3]

Defendants presented these points:

3. The agreement set up by the plaintiff is one alleged to have been made in October, 1905, and is alleged to have been to the effect that Shaaber and Herb would remove the foundry and erect dwellings on its site within two years. Under such agreement no damages would accrue to the plaintiff until after the expiration of the two years, and as this action was brought June 26, 1907, more than three months before the expiration of the two years, the verdict must be for the defendants. *Answer:* Declined. [8]

4. The lease made by Herb to Joseph Van Meter, dated March 7, 1907, after Herb had by deed of March 4, 1907, acquired Shaaber's interest, was not a breach by Shaaber and Herb of the agreement set up by the plaintiff in this case entitling the plaintiff to bring an action for damages before the expiration of the two years. *Answer:* Declined. [9]

Verdict and judgment for plaintiff for $469.64. Defendants appealed.

*Errors assigned* were (2, 3, 8, 9), above instructions, quoting them.

*Wm. J. Rourke* and *Cyrus G. Derr*, for appellants.

*Isaac Hiester*, with him *Walter S. Young*, for appellee.

OPINION BY PORTER, J., July 18, 1912:

There was a former appeal in this case, our decision upon which is reported in 43 Pa. Superior Ct. 111, and the plaintiff having again recovered a judgment in the court below, we have this second appeal by the defendants.

The opinion of our Brother MORRISON, who spoke for this court upon the former appeal, so fully and fairly states the facts, and so satisfactorily discusses the questions of law then presented, that we are relieved from the necessity of re-stating the facts or entering into any extended discussion of nearly all the questions of law attempted to be raised by the present specifications of error. Nothing can profitably be added to what our Brother MORRISON said in disposing of the questions with which we then dealt, and we have discovered no reason for receding from the disposition which we then made of those questions.

The first contention of the defendants in the former appeal was that the oral contract upon which the plaintiff relied was within the statute of frauds and, for that reason, invalid. This court held that contention not to be well founded, for the reasons stated in the opinion then filed. The second ground upon which the defendants then relied for a reversal was founded upon the assertion that the testimony produced by the plaintiff to establish the verbal contract, alleged in his statement, was not clear and satisfactory. We said, in disposing of this question: "This question is raised by the fourth and twelfth specifications of error. We find in the record considerable competent testimony tending to support the plaintiff's contention as to the alleged verbal contract, as well as to the damages alleged to have been sustained, and although we have reached the conclusion that the learned court erred in the admission of the testimony embraced in the sixth and seventh specifications of error yet we are not convinced that if the testimony embraced in the sixth and seventh specifications had been rejected, the court would have been justified in withdrawing the case from the jury. And, therefore, the fourth and twelfth specifications are dismissed." All of the testimony to which Judge MORRISON thus referred in his opinion was again presented at the trial which resulted in the judgment which defendants now seek to reverse, including the testimony of Mr. Manegold, to the effect that Herb, one of the defendants, had,

in the presence of Shaaber, the other defendant, said to him that the promise that the foundry would be removed had been made to all the parties to whom houses had been sold. There was produced at the second trial additional evidence which would have warranted a finding that the building and sale of the houses, one of which the plaintiff was induced to buy, was undertaken by the defendants as a partnership transaction. The defendant Herb testified, upon cross-examination, directly upon this point: "Q. You were partners in this building business? A. Yes, sir. No, sir; I am not continuing on with that plan; I changed that; I am not working with that plan now." Now if this answer had stood alone, it might be asserted that it was ambiguous and contradictory; that it could not be said whether or not the witness intended to testify that the relation between the defendants had been that of partners, so that one might bind the other in the line of the partnership business. This answer of the witness when taken in connection with his testimony immediately preceding this question, however, was clear and free from ambiguity. He had been examined with regard to a plan which Scholl had prepared for him and Shaaber, and had said that plan represented the way in which they had "figured out to see how the property could be used to the best advantage." He was then asked, referring to the plan: "Q. And the way in which you have proceeded to use it and are still continuing to use it; is that correct? A. Yes, sir." Read in connection with this previous examination, it is clear that the answer of the witness to the question whether he and Shaaber were partners in this building business, was the direct affirmative, "Yes, sir." Having thus answered the question, the words which he added were intended by him as a correction of his former testimony with regard to the plan, and were an explanation of his answer to the preceding question; the words "No, sir; I am not continuing on with that plan," were a negation of his former answer to the preceding question; they were clearly intended as a withdrawal of the statement that he was con-

tinuing to use the plan, and certainly could not have been understood by the jury to be intended as a withdrawal of his statement that "this building business" was a partnership transaction. This evidence was sufficient to warrant a finding that the undertaking of Herb and Shaaber to remove the foundry which they had been operating, to subdivide and build upon the property and sell the houses, had been undertaken by them as a partnership transaction. We are of opinion, as we were upon the former appeal, that the evidence was sufficient to sustain a finding that Herb, in making the agreement with the plaintiff to remove the foundry, and thereby inducing plaintiff to purchase one of the houses, acted by authority of Shaaber.

The appellants seek in the present appeal to raise for the first time the question that this action was prematurely brought. The action was brought on June 26, 1907, the plaintiff filed his statement on November 25 of the same year, and the defendants, on March 4, 1908, entered the plea of non assumpserunt. The question whether the action was prematurely brought was never raised until the second trial, on November 21, 1910, after a former trial upon the merits and an appeal to this court. The date of the agreement upon which plaintiff relied, its terms, and the date of the alleged breach were distinctly averred in the plaintiff's statement, which also averred facts disclosing that the defendants had by leasing the foundry to another party, for a period of one year from March 15, 1907, put it out of their power to comply with their oral agreement with plaintiff. The defendants knew, therefore, when they filed their plea, precisely the cause of action which they were called upon to meet, yet they pleaded the general issue. If they had then filed a plea in abatement, the plaintiff might have discontinued this action and brought a new one, for there can be no question that he would then have been entitled to do so. Prematurity of suit is matter for plea in abatement: 1 Chitty's Pleading, p. 469. This is a dilatory defense, in suspension only and not in bar of the action and should be presented

at the outset or treated as waived, when the statement filed by plaintiff fully discloses the facts. But aside from this the statement averred facts, which the testimony at the trial established, disclosing that the defendants had put it out of their power to perform. This the plaintiff had a right to treat as notice that they did not intend to perform and it was not necessary that he should postpone his suit until time for performance had arrived: Hocking v. Hamilton, 158 Pa. 107.

The remaining question is as to the measure of damages for the breach of the contract. The plaintiff asserted that he had been induced to purchase a house to be used as a residence upon the faith of the agreement of the defendants that they would tear down a foundry, to the presence of which he objected when inspecting the property. The defendants failed to discontinue the operation of the foundry within the time specified. The injury resulting from the breach of which plaintiff complained was the continued operation of the foundry, the dust, smoke and fumes from which caused the residence of plaintiff to be dirty, disagreeable and undesirable, and so causing it to be impaired in value. The general principle upon which the law awards damages is compensation for the loss suffered: Kunkel & Jordan v. Wherry, 189 Pa. 198. When the injury is permanent, the measure of the damages is the difference in market value, resulting from the injury, or the cost of repairing the injury, whichever is the lower amount: Rabe v. Shoenberger Coal Co., 213 Pa. 252. When the case was here before, the operation of the foundry which caused the injury, was to be continued, so far as the evidence then indicated. The thing which caused the injury was entirely beyond the control of the plaintiff, the defendants had put it out of their power to abate the injury for a limited period, and whether they ever would abate it was a matter which a jury could not determine. This being the case we held that the measure of damages was the depreciation in the market value of the property of the plaintiff resulting from the operation

of the foundry, which then promised to be permanent. There was produced at the second trial in the court below evidence which would have warranted a finding that the operation of the foundry had been finally discontinued, that but a small portion of the buildings, not capable of use as a foundry, remained, and that, as a foundry, it had ceased to exist. This evidence brought into the case an element which was entirely absent upon the former appeal. The contract was an oral one, but the breach of it affected only the residence property of plaintiff; the loss which plaintiff suffered was because of his ownership of the property. The injury to the property was caused by the operation of the foundry. The foundry had, if the testimony produced by defendants was believed, ceased to exist; the injury was not to be continued in the future; it was at an end. If the jury so found the facts, then the injury to the property was not permanent. The loss for which the plaintiff would in that case be entitled to recover damages, would be such as resulted to the property from the operation of the foundry during the period of the continuance of the breach of the contract. If the property had been physically injured by the sulphur, fumes, smoke and ashes it would be proper for the jury to consider that fact, as well as the effect upon the rental value of the property. The learned judge of the court below, in that part of the charge which is the subject of the third specification of error, instructed the jury, that, as the measure of damages, they should take the difference in market value of the property, "as it was and as it would have been had the contract been performed as made, if made, together with interest from the time when the contract, if there was one, was broken, taking into consideration, however, the fact that since the early part of this year the foundry business has been stopped, and the foundry at least in part dismantled, and giving to that fact such effect upon the value of the plaintiff's property as you think it is entitled to, remembering that the object to be kept in view is to make the plaintiff whole, not to punish the

defendant." The effect of this was still to make the difference in market value of the property, with the foundry in operation and with it removed as required by the contract, the measure of damages to which plaintiff was entitled. The evidence in this case disclosed no serious change of circumstances affecting the contract, during the continuance of the alleged breach. In such a case equity intervenes and allows the defendants still to perform their covenant, on payment of compensation for the injury resulting from their delay. The jury should have been instructed that if they found that the foundry had been dismantled and its operation permanently abandoned, the plaintiff was entitled to recover only for the damages which he had sustained during the operation of the foundry in violation of the agreement: Haverstick v. Erie Gas Co., 29 Pa. 254. The third specification of error is sustained.

The judgment is reversed with a new venire.