Wolfram E. Dreyfus, Doing Business under the Firm Name and Style of Cambridge Soap and Chemical Company, Respondent, *v.* Raritan Chemical Works, Appellant.

(Supreme Court, Appellate Term, Second Department, May, 1919.)

Contracts — refusal to accept goods — non-compliance with shipping instructions.

> Where a seller's action to recover the purchase price of certain soda ash is brought upon the theory that the plaintiff had performed the contract on his part, but he fails to show compliance with the instructions of the buyer to ship the goods to him at Barclay street station or some other downtown station at the city of New York, and there is no evidence of waiver of the place of destination, defendant was justified in his refusal to accept a tender of the goods at Jersey City, and a judgment in favor of the plaintiff will be reversed and a new trial ordered.

24

APPEAL by defendant from a judgment of the Municipal Court of the city of New York, borough of Brooklyn, first district, rendered against it in the sum of $243 and costs.

Hovell, McChesney & Clarkson (Sidney A. Clarkson, of counsel), for appellant.

Alvah W. Burlingame, Jr., for respondent.

KELBY, J.   The action is on a written contract, the plaintiff alleging performance on his part. This contract reads as follows:

*"August 17th, 1917.*

" RARITAN CHEMICAL WORKS,
           " 8 West 40 Street,
                     " New York, N. Y.:
    " GENTLEMEN.— We have sold you:

| | |
|---|---|
| " Material: | About 600 tons ordinary Light Soda Ash, Eagle Thistle brand, 58% Alkali, in barrels. |
| " Delivery: | About 100,000 lbs. each month beginning January 1918 and ending January 1919. |
| " Price: | Two Dollars Eighty Five Cents per cwt. basis of 58% F. O. B. Saltville, Va. |
| " Terms: | Net cash against RR B/L and documents at time goods leave the factory, Saltville, Va. |
| " Conditions: | Buyers are to give thirty (30) days previous notice of each required shipment. When no such notice is given by the buyers regarding shipment, it is agreed that the seller has the right to order these goods shipped to New |

York, and buyers agree to accept and pay for the goods as soon as RR B/L and documents are tendered them.

Sellers are not to be responsible for contingencies beyond their control, such as embargoes, shortage of cars, government seizure or control, strikes or other unavoidable causes preventing shipment at time designated by buyers or provided for herein.

Each shipment or delivery shall constitute a separate sale, and the default in any shipment or delivery shall not vitiate the contract as to other shipments or deliveries. The buyers agree and obligate themselves to accept and pay for all shipments as and when they are tendered by the sellers; if for any of the above reasons shipments do not leave the factory as ordered the buyers, however, shall not be obligated to accept any shipments or deliveries tendered after April 1st, 1919.

Any government tax upon the goods which are the subject of this sale are to be added to the contract price.

"Accepted:
 " CAMBRIDGE SOAP AND CHEMICAL CO.,
 " W. E. DREYFUS,
 " *Proprietor.*

"Accepted:
" RARITAN CHEMICAL WORKS,
 " W. E. DAY, *V. Pres.*
" Witnesses: "

The plaintiff caused to be presented to the defendant a railroad bill of lading and documents at their office in New York, the bill showing destination of consignment Jersey City, N. J.   The defendant, through one of its agents, took the bill of lading and invoice and delivered to the plaintiff's messenger the following letter:

*" May 16th,* 1918.

" CAMBRIDGE SOAP & CHEMICAL COMPANY, New York City:

" DEAR SIRS.— We respectfully return herewith invoice dated May 15th and bill of lading dated May 11th covering shipment of 190 barrels of Soda Ash, Car L. V. 72957 which is consigned to the order of Arnold, Hoffman & Company, Jersey City, N. J.   On December 10th, 1917, we gave you shipping instructions for this Soda Ash to be shipped to us at the Old Dominion Line Pier, New York City, or any freight pier New York City.   Our contract also specifies that you are to ship these goods to New York.   We are not located in Jersey City and our customer will not accept delivery in Jersey City.   Therefore, this tender is not in accordance with our contract and we respectfully reject it.

" Yours very truly,

" RARITAN CHEMICAL WORKS,

W. E. DAY, *V. Pres."*

In the case of *Littlejohn* v. *Shaw,* 159 N. Y. 188, the court held as follows:   " When the refusal to accept purchased goods is based upon particular objections, formally and deliberately stated, all other objections are deemed waived; and the vendor, in order to recover the price, need only prove compliance with the contract of sale in the particulars covered by the stated objections."

The sole point in the case then is whether the buyer was justified in his refusal of tender.

It sufficiently appears from the evidence that during the month of May there was an existing embargo on the shipment of goods to New York city piers. Permission to ship to these piers, on showing proper facts, could be had from the Domestic Division Freight Traffic Committee, North Atlantic Ports, a governmental agency.

It appears that, on April 19, 1918, the seller (plaintiff) applied to the Domestic Division Freight Traffic Committee, North Atlantic Ports, for the issuance of a permit allowing shipment of the goods in question. That application is in evidence, marked plaintiff's Exhibit 3, and is as follows:

" NEW YORK, *April 19th,* 1918.

" THE DOMESTIC DIVISION, FREIGHT TRAFFIC COMMITTEE, NORTH ATLANTIC PORTS,

" 141 Broadway, New York:

" GENTLEMEN.— Railroad shipping is hereby requested covering movement of following freight, consigned to The Cambridge Soap & Chemical Company, No. 646 Madison Ave.

" Shipper — Mathieson Alkali Works.

" Point of shipment — Saltville, Va.

" Commodity — Soda Ash.

Two

" Quantity — ~~Five~~ cars maximum capacity ~~during May, 1918~~ Maximum loading capacity.

" Terminal Road — Central R. R. of New Jersey.

" Specific Lighterage or Station Delivery desired — ~~Jay Street, Brooklyn;~~ Jersey Avenue Sta., Jersey City, N. J.

" Very truly yours,

" CAMBRIDGE SOAP & CHEMICAL CO.,

" W. E. DREYFUS, *Prop.*"

On the face of this application, it appears that the request for five cars was changed to two cars and the station of delivery desired was changed from Jay street, Brooklyn, to Jersey avenue station, Jersey City, N. J. The change as to number of cars, it appears, was made by James McDonough, of the Central Railroad of New Jersey, who was and is a member of the freight traffic committee. A glance at the face of the permit indicates change of destination was made by a freight agent when permit was first applied for. Mr. McDonough testified that an application was made for a permit to ship the goods in suit, and testified as to the particular application, just above quoted, as follows:

" The application called for five cars to be moved during May, 1918, and at that time the roads throughout were somewhat congested and a large amount of army freights and troops and coal were running over the southern roads, so that the gateways, through which this shipment would move, via Hagerstown, Maryland, or the way of Norfolk or the way of Potomac, which was in Washington, were all congested, and our instructions were not to delay trains for the Allies or the United States government. Q. What was there with respect to this shipment? A. Knowing the condition, of which we were kept constantly posted, I cut down that permit from five cars to two, for the very reasons that applications were coming in very strong, some applications asked for about twenty cars. We would cut that down one-half or probably two-thirds, so as to serve every commercial house, without blocking or congesting the roads."

It is fairly deducible from the evidence that the consignor applied for a permit for shipment through to the Jay Street Terminal, Brooklyn, and, through no fault of his, it was arbitrarily changed by government

agencies to Jersey City. It also appears from the minutes that one of the plaintiff's officers had a conversation with the defendant's agents, in January, 1918, as follows: " Q. What did he say to you and what did you say to him at that time? A. I told him, I went there telling him that there cannot be any permits gotten at the present time to ship goods to New York City. He said yes, he knew it was very difficult, and I said to him ' It ought to be easy for you to get permits, you claim these goods have been sold to the United States Government and its allies and you can easily get permits because these are preferred shipments.' "

The witness further continued: " He said very little. He said permits were hard to get, that's all."

It appears impliedly on the face of the permit itself that it was the duty of the consignee to apply for the permit, because on the face of the permit appears the following phrase in caps: " Consignee should forward this shipping permit to shipper who must present it to initial road's agent with bill of lading and shipping order."

There is no evidence in the case of any effort having been made by the consignee to get this permit. Such permit could have been readily obtained by the consignee if he wanted to take the shipment. On November twelfth, the defendant wrote plaintiff as follows: " Replying to yours of the 9th inst. please note that all our SODA ASH purchased on contract of Oct. 17th, 1917, will be used for the manufacture of explosives in the United States or will be shipped to the Allies for ammunition purposes abroad. Please note that we now give you shipping instructions to ship all the SODA ASH on this contract to us at Barclay Street station or some other down town station at New York City."

Appellate Term, Second Department, May, 1919.    [Vol. 107.

There is no evidence in the case that before plaintiff actually forwarded the goods he notified defendant of the application for the permit above described and of the change of destination, nor is there any evidence in the case of waiver of the place of destination. The general rule is, if the parties by their agreement have fixed the place of delivery, delivery of the bill so specified is, unless it be waived, an indispensable requisite to the seller's recovery; and, on the other hand, delivery, or a readiness to deliver at that place, is a sufficient performance on his part to entitle him to recover, even though the buyer was not there to receive the goods. Mechem Sales, § 1128, and cases cited.

The plaintiff, having sued on the theory that he had performed his contract, does not show that he obeyed the shipping instructions of the buyer, and, for that reason, the judgment must be reversed.

The question as to whether there was a breach by the defendant of the contract by refusing or neglecting to furnish cars and permit for the shipment is not passed upon, because of the state of the pleadings and of the evidence. In the absence of agreement or a practice to the contrary, where goods are bought F. O. B. cars, the obligation is upon the buyer to furnish the cars necessary in transportation. *Graham* v. *United States,* 188 Fed. Repr. 651; 110 C. C. A. 465. See, also, *Davis* v. *Alpha Portland Cement Co.,* 134 Fed. Repr. 274; judgment affd., 73 C. C. A. 388; *Evanston Elevator & Coal Co.* v. *Castner,* 133 Fed. Repr. 409.

Clark and Manning, JJ., concur.

Judgment reversed and new trial granted, with thirty dollars costs to abide event.