## CHICAGO LUMBER CO. v. COMSTOCK.

(Circuit Court of Appeals, Seventh Circuit. January 6, 1896.)

No. 227.

1. CONTRACTS—PAROL AND WRITTEN—MATERIALITY.

By a written contract, made in February, 1888, one C. sold to the C. L. Co. a quantity of lumber, to be dressed under instructions from the C. L. Co., and loaded on cars; the contract providing that possession of the lumber should pass at once to the C. L. Co., and that all the lumber should be removed from C.'s premises by June 15th. Orders were sent to C., during the month of March, for which he prepared the lumber, but was unable to ship it, owing to the failure of the railroad company on which the shipments were made to furnish cars. The cause of C.'s inability to ship was known to the C. L. Co., which wrote to C., exonerating him from any blame in the matter. The C. L. Co. did not remove all the lumber before June 15th, and C. afterwards sued the C. L. Co. for the amount of expenses incurred by him, under a contract with other parties, in consequence of the failure to remove the lumber before June 15th. The C. L. Co. attempted to show by parol evidence that C. had agreed orally, at the time of making the written contract, to ship 20 car loads of lumber per day, and sought to recoup damages. *Held*, that such evidence would be immaterial, since it was undisputed that the failure to ship the lumber was due solely to the inability to obtain cars which, under the contract, it was the duty of the C. L. Co., and not C., to furnish.

2. FEDERAL COURTS—JURISDICTION—CITIZENSHIP OF CORPORATION—PLEADING.

An allegation in a declaration that the plaintiff complains "of the C. L. Co., who is a citizen of the state of Illinois, defendant in this suit," is a sufficient allegation of the citizenship of the corporation, without alleging that it was incorporated under the laws of Illinois, if no objection is taken by plea in abatement.

3. SAME—ALLEGATION OF DIVERSE CITIZENSHIP.

The declaration speaks from the commencement of the action, and it is not necessary, because the declaration is filed a few days after the præcipe for the writ, that it should specifically allege diverse citizenship at the date of the filing of the præcipe.

4. PRACTICE—SUPERFLUOUS EXCEPTIONS.

The practice of taking numerous exceptions raising the same question disapproved.

In Error to the Circuit Court of the United States for the Northern District of Illinois.

This was an action by Daniel F. Comstock against the Chicago Lumber Company upon a contract for the sale of lumber. The plaintiff recovered judgment in the circuit court. Defendant brings error. Affirmed.

The defendant in error, being the owner of a number of mills and extensive grounds, yards, and buildings at Merrill, Wis., and a large quantity of manufactured lumber, in December, 1887, sold the entire plant, with the exception of the manufactured lumber, to the Wisconsin Valley Lumber Company, agreeing to remove the lumber and deliver the plant by the 15th day of the following June. He thereupon entered into negotiations with the plaintiff in error for the sale of the lumber, and subsequently, in February, 1888, the parties entered into a formal written contract, antedated to January 1, 1888, in the words following:

"Chicago, January 1st, 1888.

"Contract made this first day of January, 1888, between D. F. Comstock, of Big Rapids, Mich., and Chicago Lumber Co., of Chicago, Ills. D. F. Comstock sells to Chicago Lumber Co. his full stock of lumber at Merrill, Wis., less the amount 1,200 M. feet sold the Chicago Lumber Co. previously. All

lumber they desire to be dressed under instructions from Chicago Lumber Co., and loaded on cars, at the same price as rough stock. Price for the above is ten and 75-100 dollars ($10.75) per thousand feet, loaded on cars; payments as follows: Settlements to be made first of each month following shipments by Chicago Lumber Co., giving their paper at nine and twelve months from date, with interest at 6% after ninety days. This contract gives Chicago Lumber Co. possession of lumber from this date. The above lumber is to be removed by June 15th, 1888.

"Chicago Lumber Company,
"N. T. Green, President..
"D. F. Comstock."

At the date of the contract, a low or cut-freight rate prevailed between Chicago and points west of the Missouri river. It was asserted that the lumber was bought by the company for shipment to Western points during the prevalence of such low freight rate. On the 24th of March, 1888, the freight rate referred to was increased $1.50 per 1,000 feet. Up to the 24th of March orders by the lumber company for the dressing and shipment of lumber to the extent of from 170 to 200 car loads were not complied with by the defendant in error, owing to the refusal or inability of the railway company to furnish cars at Merrill for such shipment. Cars sufficient to meet the demand were not furnished until after the increase in the freight rate. About the middle of April, 1888, Comstock wired the company: "Railroad company say they can furnish plenty of cars. Can we ship anything?" In response to which the company answered, under date of April 19th, as follows: "D. F. Comstock, Esq.: We will do our best in placing the orders for lumber. You know the railroad is at fault for not giving you cars. when you had the order. We could not prevent their canceling orders when rates went up, and you had failed to get but few cars when rates were down. The railroad company is to blame. Hope to send you plenty of orders soon." On the 25th of April, 1888, the company writes, inclosing an order for lumber: "You can hurry forward this order as fast as you like. We note what you say in your favor of the 24th, and will continue to send you orders as fast as possible. You are aware, of course, that we had a large portion of this lumber placed before the rates went up; and it was not our fault, neither was it yours, that the lumber has not gone forward faster. Had the railroad furnished you cars, you would have had a large amount of lumber shipped, which you now have. We will do our best to send you orders." The lumber was not all moved prior to June 15th, according to the contract, and Comstock incurred certain costs and expenses with respect to the same subsequent to that date, for which, with a conceded amount due for lumber, a recovery was had at the trial. There was testimony tending to show that the lumber company agreed to pay the expenses which might be incurred by reason of the failure to move all the lumber prior to the date stated in the contract.

William Brace, for plaintiff in error.
Frederick Ullman and H. W. Hacker, for defendant in error.

Before WOODS, JENKINS, and SHOWALTER, Circuit Judges.

JENKINS, Circuit Judge, upon the foregoing statement of the case, delivered the opinion of the court.

The assignment of errors embraces 62 alleged errors. This would indicate one of two things,—either that the case was a complex and difficult one, or that counsel exercised a zeal not born of discretion. The case was simple. The principal contention at the trial was with respect to the introduction of certain evidence to prove, as is claimed, a contemporaneous independent parol agreement between the parties that Comstock would dress and load the lumber as ordered by the lumber company to the extent of 20 car loads per day. Some 32 of

the assignments of error present a like number of questions, in slightly different phraseology, seeking the same end. One question and one ruling would have sufficed to present the subject. We cannot commend this practice, and we may be permitted to say that we think the patience of the trial judge, however commendable in itself, was here exhibited to no good purpose. The rights of parties are not aided by a multitude of questions and rulings to the same point. In view of the congested condition of business at the circuit, counsel should not seek, and we suggest the court should not permit, the consumption of time and the incumbering of records unnecessarily.

We have had occasion to consider the question with respect to parol agreements in connection with the written contracts of parties. In Union Stock-Yards & Transit Co. v. Western Land & Cattle Co., 18 U. S. App. 438, 7 C. C. A. 660, and 59 Fed. 49, we asserted the principle that "parol evidence may be received of the existence of an independent oral agreement, not inconsistent with the stipulations of the written contract, in respect to a matter to which the writing does not speak, but not to contradict the contract"; and this principle is reasserted in Gorrell v. Insurance Co., 24 U. S. App. ——, 11 C. C. A. 240–246, and 63 Fed. 371–377, and in Union Nat. Bank of Oshkosh v. German Ins. Co. of Freeport (as yet officially unreported) 71 Fed. 473. We have nothing to add to what was there said, except to call attention to the cases of Engelhorn v. Reitlinger, 122 N. Y. 76, 25 N. E. 297; Thomas v. Scutt, 127 N. Y. 133, 27 N. E. 961; Naumberg v. Young, 44 N. J. Law, 331. These are well-considered cases. In the last case the principle is well stated as follows:

"Where the written contract purports on its face to be a memorial of the transaction, it supersedes all prior negotiations and agreements, and oral testimony will not be admitted of prior or contemporaneous promises on a subject so closely connected with the principal transaction, with respect to which the parties are contracting, as to be a part of the transaction itself, without the adjustment of which the parties cannot be considered to have finished their negotiations, and finally concluded a contract."

In the two cases last named it was substantially held, in accord with the case of Hei v. Heller, 53 Wis. 415, 10 N. W. 620, that, to bring a case within the rule admitting parol evidence to complete the entire agreement of which the writing is only a part, two things are essential: First, the writing must not appear upon inspection to be a complete contract; second, the parol evidence must be consistent with, and not contrary to, the written instrument. We think the cases to which we have referred fully sustain the rule, so that it will not be difficult to properly classify the exceptions to the rule under the heads to which they are related.

By this contract the lumber was to be dressed by Comstock under instructions from the lumber company, and by him loaded upon the cars. The law would imply that Comstock had a reasonable time, under the circumstances, after the receipt of the order, to dress this lumber, and to load it upon cars, if cars were furnished or obtainable. It is clear that he must comply with the instructions as to the dressing, as to the quantity, and as to the time, if a reasonable time should be stated by the company. It is claimed that the evidence of the

,whole conversation during the negotiation prior to the contract should have been received as tending to fix the time of performance, namely, that Comstock would dress and load 20 car loads a day. We are relieved from the necessity of determining whether this would be in contradiction of the written agreement, because, upon the assumption that the evidence would be competent as indicating the agreement of the parties in respect to what was a reasonable time under the contract, we think that there was no such condition of things shown as rendered the evidence material. The record shows conclusively and without contradiction that any delay in delivery which prevented the lumber company from taking advantage of the low rate of freight was caused by inability to obtain cars for the shipment of lumber. There is no evidence that Comstock in any respect failed to dress the lumber promptly upon receipt of orders. The delay was occasioned by failure of the railway company to furnish cars. Comstock, by his contract, did not agree to furnish the cars. His duty was fulfilled when he had dressed the lumber, and loaded it upon cars furnished to him for that purpose. It was the duty of the lumber company under the contract to see that cars were furnished. It is clear upon the whole record that Comstock was not liable to the lumber company for any delay in shipment. The letter of the company, under date of April 25th, absolves Comstock from all blame, and charges the delay to the neglect or inability of the railroad company to furnish the necessary cars.

We have carefully examined the remaining assignments of error which refer to matters not affecting the principal questions involved. We find no reversible error. The case was fairly submitted to the jury. Indeed, if any criticism may be indulged with respect to the charge, it is that it was too favorable to the lumber company in submitting to the jury the question whether Comstock had failed in his undertaking to dress and ship the lumber, with liberty to award damages resulting from such supposed failure.

A question is raised to the jurisdiction upon the allegation in the declaration of citizenship of the parties. The allegation is this:

"Daniel F. Comstock, who is a citizen of the state of Michigan, and plaintiff in this suit, complains of the Chicago Lumber Company, who is a citizen of the state of Illinois, defendant in this suit, summoned, etc., of a plea of trespass in the case on promises."

It is objected that the description of the defendant is insufficient to show jurisdiction, because it is impossible for a corporation to be a "citizen" within the general signification of that term, and that, therefore, it was necessary to charge that the defendant was incorporated or organized under the laws of the state of Illinois, in order to show that it was a "citizen" within the meaning of the act of congress conferring jurisdiction. We are not impressed with the force of the contention. While, strictly speaking, it may be better to allege the incorporation of the company, we do not deem it indispensable. The use of the corporate name implies incorporation for the purpose of charging citizenship of the parties. The objection is technical, going to the pleading, and, to be availing, should have been raised by plea

in abatement. The suggestion that there was no proof at the trial of citizenship of either of the parties cannot be sustained. The declaration declared diverse citizenship, showing jurisdiction. There was no plea to the jurisdiction. There was therefore no issue requiring proof in that regard. The rule that, upon the removal of cases, the petition for removal must show citizenship existing at the time of the commencement of the action, as well as at the time of the filing of the petition for removal, is here sought to be applied, because the only allegation of citizenship is contained in the declaration, and that was filed four days after the filing of the præcipe for the writ. The objection is without merit. The declaration speaks from the commencement of the action. The judgment will be affirmed.