BALTIMORE & L. RY. CO. v. STEEL RAIL SUPPLY CO.

(Circuit Court of Appeals, Third Circuit.   June 22, 1903.

No. 11.

1. SALE—CONTRACT FOR DELIVERY ON BOARD CARS—RESPONSIBILITY FOR DELAY IN FURNISHING CARS.

Plaintiff sold to defendant the old rails to be taken up from its railroad, to be shipped as soon as the new rails were laid, "delivered f. o. b. Pennsylvania Railroad cars Baltimore and Lehigh Junction." Two shipping orders were given by defendant, covering part of the rails. The first was promptly filled, and, on receipt of the second, cars were at once ordered and were loaded as fast as received, but there was a delay on the part of the railroad company in furnishing the cars, of which fact defendant was advised. Held, that under the contract plaintiff was not bound to furnish the cars nor responsible for the delay, and, it being shown that it did all in its power to obtain the cars promptly, that it was not chargeable with a breach of the contract which warranted defendant in canceling the same, or in refusing to order or accept further shipments.

2. SAME—CANCELLATION OF CONTRACT.

Plaintiff's failure to reply to a proposition made by defendant for a cancellation of the contract until five weeks after it was received did not operate as such acceptance of such proposal.

3. SAME—BREACH OF CONTRACT BY PURCHASER—MEASURE OF DAMAGES.

Plaintiff was bound only to exercise reasonable diligence in selling the rails after refusal by defendant to accept further shipments, and was entitled to recover from defendant the difference between the price so obtained and the contract price.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

Leoni Melick, for plaintiff in error.

Charles L. McKeehan and Richard C. Dale, for defendant in error.

Before ACHESON and DALLAS, Circuit Judges, and BUFFINGTON, District Judge.

ACHESON, Circuit Judge.   This was a suit brought by the Baltimore & Lehigh Railway Company against the Steel Rail Supply Company to recover damages for the refusal of the defendant to accept a lot of old steel rails, etc., which the defendant had bought from the plaintiff.   On the 26th day of February, 1900, these parties entered into two written contracts.   By one of the contracts the defendant sold to the plaintiff about 5,000 tons of new steel rails, shipments thereof "to be completed by May 31st, 1900."   By the other contract the plaintiff sold, and the defendant purchased, the old steel rails which were to be taken up from the plaintiff's road, the same being about 46 miles in length, and having a junction with the Pennsyl-

vania Railroad in the city of Baltimore, the contract providing as follows:

"Shipment to be made during June and July next, or as soon as your new rails are laid. Price: Twenty two dollars and fifty cents (22.50) per ton of 2240 lbs. delivered f. o. b. Pennsylvania Railroad cars, Baltimore and Lehigh Junction, Baltimore, Md."

The shipment of the new rails was not completed until June 30th. They were in position on August 23d, and a train was run over them on that day. A schedule of trains over the new rails went into effect on August 26th. In so far as the contract in suit was executed, the course of business pursued was this: The defendant sent to the plaintiff written shipping orders stating the quantity of rails to be shipped, the destination, and other particulars. Only two shipping orders, however, were given. The first shipping order was for 100 tons, and was sent on July 26, 1900. This order the plaintiff promptly filled by taking up a third or extra rail, which had been in former use, and (with the defendant's consent) sending these rails in wagons to the vessel of a transportation line. On August 21, 1900, the defendant sent to the plaintiff the second shipping order, which embraced 189 tons. It appears that immediately on the receipt of this shipping order the plaintiff placed an order with the Pennsylvania Railroad Company for cars for the shipment of these 189 tons of rails. There was great delay on the part of the railroad company in furnishing the cars thus called for, the reason for such delay assigned by the railroad company being the scarcity of cars. The proof is that the plaintiff made daily demands on the Pennsylvania Railroad Company for cars to make the shipment. The first two cars received by the plaintiff under its requisition came on August 31st, and thereafter at intervals, and on various days, the railroad company furnished to the plaintiff the rest of the cars for the shipment of the 189 tons of rails, the last car being received by the plaintiff on September 18th. There was evidence to show that the plaintiff promptly loaded the rails upon the cars as the latter were received, and returned the loaded cars to the Pennsylvania Railroad Company without any unnecessary delay. The defendant never gave to the plaintiff any further shipping instructions after the shipping order of August 21st. Mr. Neu, an official of the defendant company, was a witness on its behalf, and on cross-examination testified thus:

"Q. You did not expect them to take these rails and dump them down on the platform of the Pennsylvania Railroad station, did you? A. We expected them to load them. Q. Expected them to load them after they got the order from you? A. Yes, sir. Q. With directions as to where they should go? A. Yes, sir. Q. You only gave them two orders, and nothing more? A. That is all we gave them."

On September 10th, Mr. Neu, the defendant company's treasurer, visited Baltimore, and saw, at the plaintiff company's office, Mr. Shinn, the plaintiff's assistant manager, to whom he complained of the delay in the delivery of the rails. He was informed by Mr. Shinn that the delay was due altogether to the fact that the plaintiff was unable to get cars from the Pennsylvania Railroad Company. Mr. Neu himself admits that this explanation was given to him. Mr. Shinn testifies:

"We were prepared on September 10th to complete delivery of all the rails as fast as they could be loaded, as fast as cars were furnished and they could be loaded on the cars. Mr. Neu was told that by myself on that date."

Mr. Neu suggested to Shinn a cancellation of the contract, and then and there Neu wrote and signed a paper (in the form of a letter) embodying his proposal, of which the following is a copy:

"Baltimore, September 10th, 1900.

"W. A. Moore, Esq., General Manager, B. & L. R'y Co.

"Dear Sir: Referring to the contract made between us and your Company, dated Feb'y 28th, wherein we agreed to purchase a lot of relaying 40 lb steel rails and spliced bars, it is agreed between us by mutual consent that we, the Steel Rail Supply Company, cancel this contract with your company, for said material, with the exception of the 189 tons now loading, which we agree to take, and release your Company from any loss or damages we may hereafter sustain on account of non-delivery of this material.

"The Steel Rail Supply Company.
"Wm. F. Neu, Treas."

Later on the same day Mr. Neu saw and conversed with Mr. Moore, the plaintiff company's general manager. Mr. Moore testifies that Mr. Neu showed him "a paper which he [Neu] had drawn up, mutually canceling the contract for the delivery of old rails and fastenings," and that he [Moore] "positively refused to sign the agreement." Mr. Moore explained to Mr. Neu that the delay in delivering the rails was because the plaintiff could not get cars from the Pennsylvania Railroad Company. Moore testifies that he informed Mr. Neu he had made repeated requests for cars which had not been furnished, that there were then several cars of old rails in the plaintiff company's junction yard waiting to be loaded on the Pennsylvania Railroad cars, and that he "was making and would continue to make every effort to complete the delivery." Mr. Neu gave his letter of September 10th to Mr. Shinn, who turned it over to Mr. Brown, the president of the plaintiff company. Mr. Neu testifies that Shinn told him that Mr. Brown would not be in the city until Thursday, September 13th, "and on Thursday he would answer my letter or confirm my letter." This Mr. Shinn denies, and he testifies that what he said was, "probably we will be able to give you an answer on the 13th—give you some reply." On September 17th the defendant sent the following letter to Mr. Moore, the plaintiff's general manager:

"New York, Sept. 17th, 1900.

"W. A. Moore, Esq., Gen. Mgr. Baltimore & Lehigh R'y Co. Baltimore, Md.

"Dear Sir: Referring to the letter written you by our Mr. Neu, when in Baltimore on the 10th inst., and which letter you were to confirm to us by the 13th inst., not hearing from you we of course assume that the balance of this contract has been cancelled with the exception of the lot of 189 tons for which we have already given you shipping instructions. Be good enough to hurry forward the balance of this lot, sending us shipping documents, when we will pay for same, and this will close the transaction between us.

"Awaiting your further advices, we are yours very truly,

"G. H. Humphreys, Pt."

On October 17th, Moore wrote to the defendant a letter, of which the following is a copy:

"October 17th, 1900.

"Steel Rail Supply Company, 100 Broadway, New York.

"Dear Sir: Referring to yours of September 17th, in which you say that the proposition made by your Mr. Neu was to be confirmed on the 13th of same

123 F.—42

month. I know nothing of any promised confirmation on the 13th. You were told that the President would not return until the 13th of September when the matter would be laid before him, but nothing was said about confirmation of your proposal to cancel contract. This is a matter upon which the President alone could pass. As the President declines to accede to your proposition, I now advise you that we are ready to deliver this rail f. o. b. P. R. R. cars as per terms of contract and to further ask that you make immediate disposition of same.

"Yours very truly, W. A. Moore, Gen'l Mgr."

Several other letters subsequently passed between the parties, which we do not think it necessary to quote at large. In that correspondence the defendant took and adhered to the position (as stated in its letter to the plaintiff of October 19th) that "the contract is absolutely canceled, as you could not make delivery to us in accordance with our contract with you." The plaintiff subsequently sold the rails, the sale resulting in a loss, and this suit was then brought.

The court gave very full instructions to the jury as to the rights and obligations of the parties under the contract, and left to the jury the question whether or not the plaintiff had fulfilled its obligations with respect to the two shipping orders which the defendant had given, and instructed the jury that unless the plaintiff had done so it could not recover. The defendant asked the court to charge the jury "that under all the evidence in the case the verdict must be for the defendant." This point the court reserved. The jury rendered a verdict in favor of the plaintiff in the sum of $8,798.00, "the court reserving the question whether there was any evidence to go to the jury in support of the plaintiff's case." Afterwards, the court (without filing an opinion) entered judgment in favor of the defendant non obstante veredicto. To that judgment the plaintiff sued out this writ of error.

It is clear to us that the defendant was not entitled to an affirmance of its request for binding instructions in its favor. There was, we think, abundant evidence to show the plaintiff's readiness and ability to perform its contract. The plaintiff had not bound itself to furnish cars for the transportation of the rails and fastenings sold to the defendant. Its obligation was to deliver f. o. b. Pennsylvania Railroad cars, Baltimore & Lehigh Junction. Under such a stipulation it is ordinarily the duty of the purchaser to provide the cars. Kunkle v. Mitchell, 56 Pa. 100: Hocking v. Hamilton, 158 Pa. 107, 27 Atl. 836. The court, however, did not apply that principle here, but laid down a rule more favorable to the defendant. In view of the practical interpretation the parties had put upon the contract by their acts, the court charged the jury that the plaintiff was bound to make application to the Pennsylvania Railroad Company for cars when it got shipping instructions from the defendant. Certainly the plaintiff could not call upon the Pennsylvania Railroad Company for cars until it had received from the defendant shipping orders giving the destination of the rails and naming the consignee. Now the verdict indicates that the jury found that, in respect to the two shipping orders which were given, the plaintiff was in no fault, but fulfilled its entire obligations. There was ample proof to warrant such finding. It is conceded that the defendant gave no other shipping orders. The defendant in error is in no position to successfully urge that it had no notice of the plain-

tiff's readiness to make further shipments, for this record contains positive and uncontradicted evidence that on September 10, 1900, at the interview in Baltimore, Mr. Shinn, the plaintiff's assistant manager, informed Mr. Neu, the defendant's representative, that the plaintiff was prepared to complete delivery of all the rails as fast as cars were furnished. Mr. Neu's letter of September 10th was nothing more than a proposal on the part of the defendant to cancel the contract upon certain specified terms. To give the proposal effect, acceptance by the plaintiff was essential. The annulment required the mutual consent of the two parties, the same meeting of minds as was necessary to make the contract. Mr. Shinn denies that anything was said about confirmation, and testifies that he made no promise to return an answer on September 13th. Mr. Moore, to whom the letter was addressed, testifies, without contradiction, that when Mr. Neu presented the paper to him he positively refused to sign it. The defendant was not justified in assuming, as it did in and by its letter to Mr. Moore of September 17th, that the contract was canceled. The plaintiff had a right to take time to consider the defendant's offer to cancel. The plaintiff's effort to find a purchaser to take the rails was explained as having been made with a view of relieving the defendant if such purchaser could be found. Under all the evidence we cannot affirm the proposition, which the defendant in error presents to us, that "the plaintiff's silence from September 10th to October 17th shows an abandonment and rescission of the contract." We do not see how the court could have withdrawn the case from the jury by giving the peremptory instruction the defendant requested, and, the verdict being in favor of the plaintiff, it was error for the court to enter judgment in favor of the defendant.

The suggestion that the damages were assessable as of September 17, 1900, and therefore that, under the evidence as to the market price of rails at that time, the plaintiff suffered no damage, is without merit. The court charged the jury that, upon finding that the contract was at an end, the plaintiff was bound to dispose of the rails for the best price that could fairly and reasonably be obtained, and to exercise reasonable and proper care and diligence in selling. These instructions, we think, were correct, and it does not appear that they were disregarded by the jury.

The judgment of the Circuit Court is reversed, and the case is remanded to that court with direction to enter judgment in favor of the plaintiff upon the verdict.