AMERICAN TRUST & SAVINGS BANK v. ZEIGLER COAL CO. (two cases).

(Circuit Court of Appeals, Seventh Circuit. October 6, 1908.)

Nos. 1,451, 1,452.

1. ACTION (§ 56\*)—CONSOLIDATION—DISCRETION OF COURT.

Under Rev. St. § 921 (U. S. Comp. St. 1901, p. 685), authorizing the court to consolidate causes when it appears reasonable to do so, a Circuit Court may in its discretion consolidate cross-actions between the same parties for breach of the same contracts.

[Ed. Note.—For other cases, see Action, Cent. Dig. § 631; Dec. Dig. § 56.\*]

2. SALES (§ 83\*) — CONTRACT FOR SALE OF COAL TO BE DELIVERED "F. O. B. CARS"—DUTY TO FURNISH CARS.

Where, under a contract for the sale and shipment of coal by a coal company, which provided that deliveries should be made "f. o. b. cars" at the mine, during several months the seller obtained from the railroad companies all cars in which shipments were made, and excused delays to the purchaser on the ground of shortage of cars, without making any claim that the purchaser was bound to furnish the same, the contract must be construed as requiring the seller, and not the purchaser, to furnish cars.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 224-227; Dec. Dig. § 83.\*]

3. EVIDENCE (§ 155\*)—LETTERS OF ADVERSE PARTY—SELF-SERVING STATEMENTS.

Self-serving statements of fact, made in letters written by one party, which are introduced in evidence by the adverse party for other purposes, are neither confessed by such introduction nor made competent evidence thereby.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 453; Dec. Dig. § 155.\*]

4. TRIAL (§ 170\*) — TAKING QUESTION FROM JURY — DIRECTION OF VERDICT IN CONSOLIDATED CAUSES.

Where an action to recover the price of coal sold and delivered under a contract was consolidated for trial with an action by the purchaser against the seller to recover damages for breach of the contract, but the issues in each action were tried independently, the direction of a verdict for the plaintiff in the first action, on the admission by the defendant that the account was correct, was not error because of error committed on the trial of the other issue.

[Ed. Note.—For other cases, see Trial, Dec. Dig. § 170.\*]

In Error to the Circuit Court of the United States for the Northern Division of the Eastern District of Illinois.

The plaintiff in error, as trustee in bankruptcy of Scott Coal & Coke Company (substitute for the bankrupt), brings for review under these writs two several judgments, entered in the Circuit Court against such bankrupt corporation. In No. 1,451, Scott Coal & Coke Company sued Zeigler Coal Company, defendant in error, in assumpsit to recover damages for alleged breach of contracts for delivery of coal, set out in various counts of the declaration, as amended. Issues were joined, and upon submission to a jury the trial court directed a verdict in favor of the defendant, resulting in the judgment complained of. No. 1,452 exhibits a suit by Zeigler Coal Company (commenced prior to the above-mentioned action) against Scott Coal & Coke Company to recover for coal actually delivered under contract, with plea of general issue and trial to a jury, wherein the court directed a verdict against the Scott Coal & Coke Company, assessing damages at $3,927.68, and judgment was recovered accordingly. These actions were consolidated, under orders entered by the trial court, and proceeded to trial before a jury, with the issues in each treated as independent issues thereupon. The questions arising under each writ of error and such facts as are involved therein are stated in the opinion.

Charles E. Pope, for plaintiff in error.
Horace Kent Tenney, for defendant in error.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

SEAMAN, Circuit Judge (after stating the facts as above). The reviewable questions which arise under either of these writs of error are free from complication, as we believe, either in law or fact, notwithstanding the extent of testimony (appearing in the transcript of record in No. 1,451) and numerous propositions, both of law and fact, discussed by counsel in the oral argument and submitted, respectively, in printed briefs. In each writ are involved the same agreements upon terms for deliveries of coal from the mines of Zeigler Coal Company (hereinafter referred to as the "Zeigler Company") at Zeigler, Ill., on shipping orders sent by Scott Coal & Coke Company (hereinafter mentioned as the "Scott Company") for consignment to various customers of the last-named corporation. The contracts in litigation were made in 1905, at various dates, for purchase and shipment by rail of two general classes of coal mined at Zeigler—one designated as "prepared coal" and the other as "screenings"—for periodical deliveries as stated up to March 31, 1906. Provisions for the amount of prepared coal to be shipped on orders, for proportional monthly shipments, and for the price of each grade are contained in a series of letters in evidence—commencing with letters dated, respectively, June 6, 7, and 8, and renewed and confirmed in letter of the Zeigler Company, dated November 2, 1905—and such correspondence clearly establishes, as we believe, mutual understanding and obligation in each of these terms, with 25,-000 tons of prepared coal as the aggregate amount to be ordered and delivered under the entire contract. The agreements for screenings were several—oral in part, but mainly confirmed by letters—and the amounts, price, and terms of shipment are specified and uncontroverted.

Under the several contracts the Zeigler Company made shipments of prepared coal and screenings, commencing in June, 1905, and continu-

ing up to January 27, 1906, when it refused to make further deliveries, upon the alleged ground of failure on the part of the Scott Company to pay for prior shipments; and the facts are undisputed in reference to the amounts shipped and actual payments made. On the other hand, failures on the part of the Zeigler Company to make shipments at the times and in the quantities intended by the contracts appear from the testimony. Controversy thus arose between the contracting parties whether one or the other was in default under the terms of the several contracts, and each brought suit against the other, in assumpsit, to enforce its contentions. These actions were consolidated, pursuant to section 921 Rev. St. U. S. (U. S. Comp. St. 1901, p. 685), on motion of the Scott Company, and trial of the issues to a jury resulted in a verdict in favor of the Zeigler Company in each cause, as directed by the trial court, and several judgments accordingly.

The method of trial so adopted, with the two cases treated as separate alleged causes of action, requiring separate verdicts and judgments, conforms to the purpose of the statute referred to, as upheld in Mutual Life Insurance Co. v. Hillmon, 145 U. S. 285, 293, 12 Sup. Ct. 909, 36 L. Ed. 706, and recognized in American Window Glass Co. v. Noe (decided by this court during the current term) 158 Fed. 777, 86 C. C. A. 133. Several writs of error were needful, therefore, for review of such judgments as presented here in cases Nos. 1,451 and 1,452; but the questions arising under each are independent, and no ground appears for the preliminary motions submitted on behalf of plaintiff in error to consolidate writs or records for the purposes of review, although heard together and so embraced in this opinion. The contentions for reversal in each case hinge upon alleged error of the trial court in directing verdict in favor of the defendant in error, and they are determined in the cases severally as above entitled.

1. The issues in No. 1,451, suit of the Scott Company against the Zeigler Company, under the several counts of the declaration and general plea, are: (1) Whether the contracts were made between the parties for purchase and delivery of coal as averred; (2) whether the Zeigler Company was guilty of breach thereof; and, in such event, (3) what damages were incurred. As above stated, the making of the contracts is established by uncontroverted evidence, and no uncertainty appears in the terms agreed upon, unless it arises out of failure to specify which one of the parties was to provide the cars for shipment of the coal from the mines at Zeigler to destination as ordered. So all facts are settled in the first-mentioned issue, leaving only the meaning of the contracts, in reference to furnishing the cars, or the fact of agreement thereupon, to be ascertained upon the issue of breach.

The primary facts averred as breaches of the several contracts being undisputed—namely, repeated failures on the part of the Zeigler Company to fill the orders duly given for shipments of coal under such contracts within the times or in amounts stipulated therefor, both before and after the renewal contract made November 2, 1905—the contentions in support of the judgment are, substantially, that the Zeigler Company was not in default in such nonperformance, for these alleged causes: (a) That cars were not provided by the Scott Company to

make the required shipments; (b) that failures to make shipments were due to inability on the part of the Zeigler Company to obtain cars therefor in any view of its obligations in that behalf; (c) that the Scott Company is chargeable for delay or breach in cancellations and changes of shipping orders; and (d) that the Scott Company was in default for nonpayment of invoices, when the Zeigler Company, on January 27, 1906, refused to make further deliveries. The first two contentions only—in reference to car supply—appear to have been applied by the trial court for direction of the verdict in favor of the Zeigler Company, and we are not impressed with either of the others as meriting extended discussion. They are dismissed, therefore, with remark, in passing: While delay caused by the purchaser, in cancellation or change in orders, may well defeat recovery for such delay, no sufficient evidence to that end appears in the record to take the case from the jury. The assumed default of the Scott Company refers to payments withheld for December and January shipments of coal, for which it rendered offset of damages for delays claimed in shipments; but such offers were promptly made, in our view of the testimony, and any question of default therein on the part of the Scott Company rested alone on solution of the primary issue whether its claim of damages was then well founded.

The propositions on which submission to the jury was denied, and a verdict directed, are thus stated, substantially, in the instructions: (1) That the contract for delivery of "prepared coal," making no express stipulation for providing the cars for such deliveries, imposes such duty on the purchaser (under authorities cited), and, failing to supply the cars for shipments thereunder, the Scott Company, as purchaser, was not entitled to recover for nondeliveries; (2) that the several contracts for "screenings" expressly exempted the seller from obligation to deliver "in case of short car supply," and letters in evidence establish that "the failure to deliver" thereunder "was because of a shortage in the car supply," not disproved by plaintiff in the suit, so that the Zeigler Company was relieved from liability for the nonperformance charged in the declaration. Both of these propositions are urged in support of the judgment, as alike applicable to all the contracts in suit, and we have considered them in reference to either theory.

(1) The question whether the Scott Company, as purchaser of the coal for shipment from Zeigler, became obligated under any of the contracts to provide cars for its delivery, arises (as before stated) with all express contract terms undisputed, and the fact conceded that no cars were so furnished by this purchaser for any delivery made or ordered in the course of the transactions. Although each contract plainly requires all deliveries of coal to be made on cars for shipment by rail, no undertaking on the part of either seller or purchaser to place orders for such cars is expressed in any of the letters in evidence, making up the several contract terms, nor mentioned in the testimony, oral or written, as expressly agreed upon. The only provision contained in the contract for "prepared coal" in reference to delivery requires the seller to deliver at Zeigler, "f. o. b. cars"—the well-known

commercial term which relieves the seller from expense or risk after shipment—while like terms in the several contracts for "screenings" are thus supplemented: "Subject to strikes, short car supply, and unavoidable accidents." Upon these distinctions in the contract terms, respectively, the trial court appears to have placed its several interpretations of duty thereunder, concluding with an instruction against recovery under either contract.

For the construction adopted of the express terms referred to in the contract for delivery of prepared coal, support appears in the line of authorities relied upon as precedents for a general rule applicable to these terms of delivery "f. o. b." (and like provisions between purchaser and seller) for shipment by rail, that the purchaser thereby assumes the duty to furnish cars for such delivery, alike with the established rule in reference to "f. o. b." contracts for shipment by vessel. Hocking v. Hamilton, 158 Pa. 107, 115, 27 Atl. 836, and cases cited; Chicago Lumber Co. v. Comstock (in this court) 71 Fed. 477, 18 C. C. A. 207; Davis v. Columbia Coal Min. Co., 170 Mass. 391, 49 N. E. 629, and cases cited. Another line of authorities (John O'Brien Lumber Co. v. Wilkinson, 117 Wis. 468, 470, 94 N. W. 337; Vogt v. Schienebeck, 122 Wis. 491, 496. 100 N. W. 820, 67 L. R. A. 756, 106 Am. St. Rep. 989) adopts a general rule for interpretation of such contracts for delivery on cars, but reverses the implied obligation, as resting on the seller to obtain the cars. In Illinois, however—where these contracts were entered into and made performable—the Supreme Court has rejected both of the foregoing views of a general rule for ascertaining the obligation, under like contracts for delivery at a mine, and, resorting to evidence of subsequent conduct in performance, has uniformly "adopted the construction placed upon the contract by the parties themselves" as the test, and so charged the seller with duty to furnish the cars, in each instance. Consolidated Coal Co. v. Jones & Adams Co., 232 Ill. 326, 328, 83 N. E. 851, and prior cases reviewed. With precedents thus conflicting, not only on the import of the general rule, but as to any prima facie force of the terms of delivery referred to, the issue of contract duty to provide the cars would appear difficult of solution, in the absence of other evidence to establish the understanding of the contracting parties. We are of opinion, however, that the proof to that end is sufficient in this record, within the well-settled rule of interpretation under which the above-cited Illinois cases are decided, and that neither the above-mentioned question of any general rule of implied duty under the phrase "f. o. b. cars," nor the further question whether the Illinois definition of their effect is controlling, as variously discussed in the briefs, is involved for determination.

The express provision in each contract for delivery of the coal on cars, to be shipped to various points necessarily implies an agreement or understanding, between the parties for its performance, that such cars were to be obtained from the railroad companies upon timely orders to be given by one of the parties, such requirement for the service being patent to both; and the utmost effect of the assumed general rule, upon which the trial court directed the verdict, is to raise the

prima facie inference that the parties intended the purchaser to make such orders, when not otherwise agreed upon—while the rule cited contra infers the seller to be intended—so that neither rule is applicable to set aside any arrangement they make for this incidental requirement. It cannot, of course, affect their contract right to provide therefor as they may agree upon, and, when the evidence shows their mutual understanding of the duty, any conflicting inference under the assumed rule is without force; and such arrangement between the parties, construing or fixing such duty not otherwise specified in the terms of sale, is provable as well by circumstantial evidence (in settled course of conduct or like incidents and assent in performance) as by express stipulation.

Under each contract in suit deliveries were constantly made during the several months of performance, on cars which were uniformly obtained by the Zeigler Company, through its requisitions upon the railroads, and the voluminous correspondence between the parties throughout the course of the transactions discloses no intimation of duty or neglect on the part of the Scott Company to provide cars; nor is there any testimony in the record which tends to support that view. These letters in evidence (making up most of the testimony) abound in complaints made by the Scott Company of failures to ship the coal promptly on their contract orders, and in various excuses stated by the Zeigler Company for such delays—with alleged failure of the railroad companies to supply cars on their orders as one of the causes—and instances appear of aid offered by and suggested to the Scott Company to urge the railroad officials to "remove restrictions" and supply the needful cars. Each instance, however, relates to orders given by the Zeigler Company for such cars, and authorizes no inference that the Scott Company was intended or expected to perform the duty of placing orders. Indeed, under the proof that extensive shipments of coal to other purchasers from the Zeigler Company were carried on meantime, for which car supply was constantly required, no method would seem feasible for the numerous purchasers, or either of them, to make the requisitions upon the railroads for the cars, under the well-known and needful regulations demanded for apportionment of such service. The fact, therefore, of agreement, express or implied, that the Zeigler Company were to obtain the cars for all these deliveries in suit, is clearly established, as we believe, by the evidence, and the direction of verdict was unauthorized under the general rule referred to, were such rule otherwise applicable to either contract.

(2) The contention that verdict was rightly directed in favor of the Zeigler Company, under "undisputed proof" of car shortage as the cause of each failure to make timely delivery of coal, would impress us with force—not only in reference to the contracts for screenings, as pointed out in the instructions, but for delays as well so caused in shipments of prepared coal—were the evidence upon which such contention rests both competent and decisive that inability to obtain cars was the sole cause of each alleged default in delivery. Whatever the fact may be, however, we are of opinion that no sufficient evidence to that end is of record. The so-called "undisputed proof" is comprised

in repeated statements by the Zeigler Company (in letters to the Scott Company excusing delays) that the railroad companies refused or neglected to furnish the cars, and in references to such difficulty which appear in letters written by the Scott Company.

As these letters were introduced by the Scott Company, with all the correspondence between the parties, in the course of its direct evidence, without objection or reservation, it is contended, in substance, that statements so appearing in letters offered by it, though written by the adverse party, thus become evidence of facts therein stated, and (saying the least) required the Scott Company to disprove such excuses for delay to make out its prima facie case. This view we believe to be untenable under the well-settled rules of evidence, which recognize the admissibility of correspondence between the parties for various purposes, but impose no such burden upon its introduction by either party. Self-serving statements of fact, thus appearing in a letter introduced by the adverse party, are neither confessed by such offer, nor made competent proof of facts so stated. Moreover, evidence appears in the record, offered on behalf of the Scott Company, of the supply of cars at the mines during the period in controversy, tending to disprove car shortage as an excuse for nondeliveries under either contract; and, if any issue of fact arose under the excuses, it was for determination by the jury.

We are satisfied, therefore, that error is well assigned in No. 1,451, upon the instruction to find against the plaintiff in error under the issues.

2. In No. 1,452, however—the suit by the Zeigler Company to recover on account of coal actually delivered under the several contracts, the first issue submitted under the consolidation for trial—we are of opinion that no reviewable error appears in the record. The bill of exceptions shows that trial of the issue joined therein was in progress when the Scott Company (defendant) entered its admission that the account as stated was correct and that the plaintiff's "prima facie case" was established, although counsel for the Scott Company had previously stated: "We claim that we have offset it [the amount thus due] against the damages which we have sustained." Thereupon the plaintiff rested its case, and the court ruled the defendant to "proceed with the defense." Instead of such course, however, counsel for the Scott Company thus stated their election to waive such defense and proceed independently in their above-mentioned suit No. 1,451, viz.: "We are not starting in on the defense, but we are starting in on the affirmative in our case" and the trial so proceeded to a conclusion with no offer of the testimony, at any stage, by way of defense or offset in the prior issue; nor does any request or motion appear for submission to the jury in that view. Whatever of benefit was sought by the plaintiff in error in this course, the way was clearly open under the consolidation to preserve any claim of offset against the account; but its election to pursue its claim for damages alone in its suit (No. 1,451) left no issue for submission to the jury on the account as confessed, and the separate judgment therein, entered upon verdict directed accord-

ingly, cannot be disturbed for the erroneous direction in the subsequent issue thus tried independently.

The judgment, therefore, against the plaintiff in error in No. 1,451, is reversed, and such cause remanded to the Circuit Court for a new trial. In No. 1,452 the judgment against the plaintiff is affirmed.