Culp v. Sandoval, 22 N. M. 71.

---

[No. 1858, May 1, 1916.]
[On Motion to Dismiss Motion for Rehearing, Sept. 4, 1916.]
## CULP et al. v. SANDOVAL.

### SYLLABUS BY THE COURT.

1. Where a person has agreed to perform an act, whatever is necessary to the performance of the act is a part of the agreement, and it is implied that he must furnish the means of accomplishing the act; hence, when a vendor has contracted to sell goods f. o. b. cars, he must procure the cars and load the goods thereon.                P. 73

2. Where, under a contract the vendor reserves unto himself the option of delivering the goods sold to the vendee, on board a vessel or the cars of a railroad company, upon any one of 5 days or any one of 15 days, assuming that it is the duty of the vendee to furnish the vessel or cars, the vendor is obligated to notify the vendee at what time he proposes to deliver the goods.                P. 81

3. Where a party appealed from a judgment adverse to him in the district court and executed a supersedeas bond which stayed and suspended all proceedings under such

judgment, and preserved the status quo pending the deter-
mination of the appeal and p rior to a final determination of
the appeal, such party voluntarily pays and satisfies such
judgment; such payment amounts to a voluntary acquiescence
in and recognition of the validity of such judgment, and es-
tops appellant from further prosecuting his appeal.

P. 80

Appeal from District Court, Bernalillo County; H. F.
Raynolds, Judge.

Action by C. S. Culp and B. C. Culp and Isaac Barth,
copartners doing business as Culp-Barth Sheep Company,
against Jesus M. Sandoval. From a judgment for plain-
tiffs, defendant appears. Affirmed.

NEILL B. FIELD of Albuquerque, for appellant.

MANN & VENABLE of Albuquerque, for appellees.

## OPINION OF THE COURT.

ROBERTS, C. J.—On the 23d day of November, 1910,
a complaint in two counts was filed by the appellees against
the appellant, alleging in the first count that the appel-
lant, Sandoval, agreed to sell and deliver to the said ap-
pellees, f. o. b. cars at Albuquerque, between the 5th day
of November, 1910, and the 10th day of November, 1910,
1,800 lambs at agreed prices, which lambs were to be in
good condition, free from scab, and to pass government
and territorial inspection. A copy of this contract was
attached as an exhibit to the complaint. It was further
alleged that the appellant, Sandoval, refused to deliver
the lambs at the time and place agreed upon, and that
thereby the appellees suffered certain damages. They fur-
ther alleged that they advanced and paid to the appellant
as an advance payment $500, and they asked damages
for the alleged breach of the contract upon the first cause
of action in the sum of $1,328. The second cause of ac-
tion alleged the breach of a contract entered into on the
20th day of October, A. D. 1910, between the same par-

ties, whereby the appellant agreed to sell and deliver f. o. b. cars Albuquerque, N. M., one double-deck car of old ewes at a certain agreed price. It was alleged that $75 had been advanced and paid to appellant as an advance payment upon these sheep, and alleged the failure of the appellant, Sandoval, to keep his contract and to deliver the sheep. A copy of this contract was also attached as an exhibit.

[1] The appellant filed an amended answer and counterclaim. For the purpose of this appeal it is sufficient to say that the appellant denied that he failed and refused to deliver to the said appellees the said lambs, or any part thereof, and alleged that the appellees did not, at any time before or subsequent to the 10th day of November, 1910, provide any cars upon which the appellant could deliver the lambs and ewes so contracted and agreed to be delivered, and alleged that after appellees had failed to supply the cars, he made a tender of the lambs and sheep to the appellees, which appellees refused to accept, for the reason that the market price of lambs and sheep of the quality and character contracted for had greatly depreciated prior to the time the appellees had agreed to accept the delivery of the lambs. Appellant alleged in his amended counterclaim that as a result of the failure of the appellees to keep their contracts, he has suffered damages in a certain amount, and he filed a bill of particulars, showing damage in the amount of $1,428.90. A reply was filed to the amended answer and counterclaim, which denied substantially all the new matter set up in the amended answer and counterclaim, and denied that the appellees ever agreed to furnish appellant any cars whatever, and alleged that the cars were to be furnished by the appellant for the shipment of said sheep and lambs. This allegation as to the liability of the appellant to furnish the cars, the court, after full argument, struck out of the reply on motion of appellant, holding that, as a matter of law, the appellees were obligated to furnish cars. The cause thereafter came on for hearing, and the court made certain findings, some at the request of the appellant, and some at the request of the appellees, and

signed a bill of exceptions, in which the substance of all the evidence is set forth.   The court found:

"That the plaintiffs never demanded from the defendant. Sandoval, at any time the delivery of sheep and lambs in compliance with the contract, and never designated nor pointed out to the said defendant, Sandoval, any cars upon which Sandoval might load the sheep and lambs described in the contracts, nor notified the said Sandoval that the plaintiffs were ready to receive the sheep and lambs, or had cars in readiness upon which the sheep and lambs might be loaded by the defendant."

It also found:

"That between the 5th and 16th days of November, 1910, the market price of lambs in Albuquerque depreciated to the extent of approximately one cent a pound."

It also found that the appellant, Sandoval, failed to deliver the sheep and lambs at the times and places agreed upon in said contracts, and rendered judgment for appellees for $500, with interest at the rate of 6 per cent. per annum from October 3, 1910, until paid, and the further sum of $75 with 6 per cent. per annum from the 20th day of October, 1910. It also found that the appellant, Sandoval, did, upon the 16th day of November, 1910, tender the sheep and lambs of the kind and number described in the contracts, and which substantially complied with the requirements thereof, and that appellees refused to accept the same upon the ground that the time for the delivery thereof had expired.   To the action of the court in holding that the defendant had been guilty of breach of contract, and therefore was liable in damages to the plaintiffs, and from the final judgment rendered in accordance with such decision, this appeal is prosecuted.

The order, entered June 2, 1911, striking out the third paragraph of appellees' reply, which paragraph of reply set up the fact that it was the appellant's duty to furnish the cars and load the lambs and sheep thereon, was made by the presiding judge of said court prior to statehood. Judge Raynolds, who tried the case, as appears from the finding, quoted supra, evidently took the view that under

the terms of the contract it was the duty of appellant to furnish the cars and deliver the sheep and lambs loaded thereon. Appellant, in his brief, says:

"The controlling question in the case which the plaintiffs disputed at all times in the lower court is, Who was to furnish the cars under the terms of the contract?"

Appellees refuse to meet appellant upon this issue, and advance a theory, which they deduce from the evdience, in support of the judgment in their favor. Without discussing appellees' theory, we will proceed upon the assumption that appellant has correctly stated the issue, and pass to a consideration of the question upon which he relies for a reversal.

The general rule is that one who undertakes to accomplish a certain result impliedly agrees to supply all means necessary to such result. Here appellant agreed to deliver the lambs and ewes to appellees f. o. b. cars at Albuquerque. The term "f. o. b." has a well-known and clearly understood meaning in the business world, signifying "free on board." Bouvier's Law Dictionary. Under this contract, then. appellant undertook and stipulated with appellees that he would deliver the stock to them, at his own expense, on board the cars at Albuquerque and within a stipulated time. When delivery was made, in accordance with the contract of sale. appellees were to make payment for the lambs and ewes.

Appellant admits that he could not deliver the lambs and ewes from his own flock, as was evidently contemplated by both parties, because such animals were infected with scabbies, and he was required to "dip" them by the government inspectors. He contends, however, that he did not breach his contract because appellees failed to have the railroad company set out cars to receive the designated number of lambs and ewes purchased, and to notify him thereof.

It is undeniably true that the early English cases held that, unless it was otherwise provided in a contract to ship f. o. b., the duty of specifying or furnishing the transportation facilities fell upon the buyer. Armitage

v. Insole, 14 Q. B. 728; Sutherland v. Allhusen, 14 L. T. N. S. 666. Some of the American state courts have followed the same holding. Hocking v. Hamilton, 158 Pa. 107, 27 Atl. 836; Dwight v. Eckert, 117 Pa. 490, 12 Atl. 32; Kunkle v. Mitchell, 56 Pa. 100; and the early Wisconsin case of Boyington v. Sweeney, 77 Wis. 55, 45 N. W. 938. In Illinois the question has been frequently discussed, but never definitely decided. In the case of American Trust & Savings Bank v. Zeigler Coal Co., 165 Fed. 34, 91 C. C. A. 72, the Circuit Court of Appeals, Seventh Circuit, in discussing the Illinois cases, said:

"In Illinois, however—where these contracts were entered into and made performable—the Supreme Court has rejected both of the foregoing views of a general rule for ascertaining the obligation, under like contracts for delivery at a mine, and, resorting to evidence of subsequent conduct in performance, has uniformly 'adopted the construction placed upon the contract by the parties themselves' as the test, and so charged the seller with duty to furnish the cars in each instance. Consolidated Coal Co. v. Jones & Adams Co., 232 Ill. 326, 83 N. E. 851, and prior cases reviewed."

In a more recent Illinois case (Harman v. Washington Fuel Co., 228 Ill. 298, 81 N. E. 1017), the Supreme Court said:

"There as been a difference of opinion between different courts as to whether the duty devolves upon the seller or the purchaser to furnish cars where there is a contract for delivery f. o b cars and the contract is silent as to which one shall furnish the cars. Some courts have followed the rule, applicable in other cases, that where one makes an agreement to perform an act, whatever is necessary to the performance of the act is a part of his agreement, and it is implied that he will secure the means necessary to the accomplishment of the act. The natural meaning of the words 'free on board' is, that the goods are to be furnished by the seller on board free of all charges and expenses up to and including the loading, and the courts adopting the rule just stated hold that the seller must furnish the cars. Other courts, apparently following the rule established when goods were to be delivered free on board a ship, have held that the duty to furnish cars rests upon the purchaser. The term in question was frequently inserted in contracts for sale and delivery of goods free on board a vessel, and it was held that the seller was under no obligation to act until the purchaser should name the ship on which delivery was to be made, for the reason that, until the seller knew the ship,

he could not put the goods on board. It was held that the seller was entitled to know on what ship and where he was required to deliver the goods, and that rule has been referred to, although it is manifestly wholly unsuited to shipments by rail under present conditions, at least unless the sale is made to a railroad company, or the means of transportation contemplated is under the control of the purchaser. The question, which is the correct construction of such a contract? has not been determined by this court, and is not now determined."

In the federal cases (Chicago Lumber Co. v. Comstock, 71 Fed. 477, 18 C. C. A. 207; American Trust & Savings Bank v. Zeigler, supra), the courts adopted, in this regard, the construction placed upon the contract by the parties, following the Illinois rule. These two cases originated in Illinois, and the federal courts applied the law as construed by the Supreme Court of that state.

In the case of Evanston Elevator & Coal Co. v. Castner, 133 Fed. 409, decided in the Circuit Court, Northern District of Illinois, Judge Kohlsaat followed the Pennsylvania rule, and held that under the contract for the delivery of coal f. o. b. cars at the mines, it was the duty of the buyer to furnish the cars.

In Davis v. Alpha Portland Cement Co., 142 Fed 74, 73 C. C .A. 388, and Baltimore & L. Ry. Co. v. Steel Rail Supply Co., 123 Fed. 655, 59 C. C. A. 419. the same rule was announced, but these cases both arose in Pennsylvania, and naturally the federal courts followed the rule established by the Supreme Court of that state.

In Graham v. United States, 188 Fed. 651, 110 C. C. A. 465, Circuit Court of Appeals, Fourth District, the text of 35 Cyc. 197, was approved, but a decision of this question was not necessarily involved in the case.

We have referred to all the American cases which have been called to our attention, holding that the duty of furnishing the cars or means of transportation rests upon the buyer, under a contract by the seller to deliver goods to the buyer f. o. b. cars. From the foregoing it will be seen that the Supreme Court of Pennsylvania is the only state court so holding, and that only two federal cases, one a decision by a district judge, uninfluenced by state decisions, so decide.

On the other hand, the following state courts have followed the rule, of general application, that where a person has agreed to perform an act, whatever is necessary to the performance of the act is a part of the agreement, and it is implied that he must furnish the means of accomplishing the act, and that therefore, when a vendor has contracted to sell goods f. o. b. cars, he must procure the cars: Hurst v. Altamont Mfg. Co., 73 Kan. 422, 85 Pac. 551, 6 L. R. A. (N. S.) 928, 117 Am. St. Rep. 525, 9 Ann. Cas. 549; Elliott v. Howison, 146 Ala. 568, 40 South. 1018; R. J. Menz Lumber Co. v. E. J. McNeeley & Co., 58 Wash. 223, 108 Pac. 621, 28 L. R. A. (N. S.) 1007; Vogt v. Schienbeck, 122 Wis. 491, 100 N. W. 820, 67 L. R. A. 756, 106 Am. St. Rep. 989, 2 Ann. Cas. 814.

As the question has never been heretofore decided in this state, this court is unhampered by precedent, and is free to adopt the rule which appears to be best suited to present business conditions and the most consonant with reason. The early English cases, in establishing the rule contended for appellant, necessarily were familiar with the course of business and the manner and method of transporting goods. Such courts knew that most of the shipping was done by boats, which plied at irregular intervals between the different ports of England and foreign countries; that there was no established and unvarying freight rates, and that inland transportation was likewise almost exclusively a matter of private contract. The buyer, in cases where the goods were delivered to the carrier for transportation f. o. b. the point of origin, was required to pay the cost of cartage; hence he was vitally interested in selecting the carrier. No such reason can exist for adherence to this doctrine, under the present transportation methods in the United States. Here the freight charges are fixed and unvarying, without first obtaining the approval of the United States Interstate Commerce Commission in so far as interstate rates are concerned, and the State Corporation Commission in so far as intrastate rates are concerned. This consideration, which undoubtedly largely influenced the courts in the

early cases, no longer is an element to be taken into consideration.

In view of the known methods of conducting business and the further fact that daily transactions take place between buyer and seller for the purchase and sale of goods to be shipped to the seller, where the purchase is made f. o. b. cars at the point of shipment, which may be many thousands of miles removed from the point of destination, it would be unreasonable to say that the seller can excuse his default in the shipment of the goods according to the terms of his contract because the buyer has failed to specify or furnish the means of transportation.

In the case of Vogt v. Schienbeck, supra, the Supreme Court of Wisconsin soid:

"The proposition seems contrary to universal understanding, which ought to be deemed a matter of judicial cognizance without the aid of evidence or adjudged cases. We apprehend that when one buys merchandise of another to be shipped to him by rail from a distant point, the delivery to be made to him f. o. b. cars at the point of starting, such other, as a matter of course, is expected to obtain from the railway company the necessary cars upon which to load il subject of the deal."

This we believe to be the more reasonable and rational rule; hence should be applied in this case, unless some peculiar reason exists by virtue of the contract which makes it non-applicable. The only one which might be suggested is that the contract fails to name the point of destination; hence appellant was unadvised as to the cars to select. Whether appellees ever advised appellant as to the proposed destination of the lambs and ewes does not appear from the findings by the court, or from the bill of exceptions, which, however, does not purport to contain a stenographic copy of the evidence adduced upon the trial. It is possibly true that it would be incumbent upon the buyer to indicate to the seller, prior to his engaging the cars, the point of destination of the goods purchased, by reason of some rule or custom of the carrier, but as this point was not raised in the trial court by the pleadings, findings, or evidence, in so far as we

Culp v. Sandoval, 22 N. M. 71.

are advised by the transcript of record, we will not consider it.

There is another point, not suggested by counsel, but equally fatal to appellant's recovery. Under the contract appellant had the option of delivering the lambs at any time between the 5th and 10th days of November, and the ewes any time between the 1st and 15th days of the same month. Until appellant notified appellees of the day on which he proposed to deliver, the latter could not possibly know when to have the cars ready for the reception of the stock, if we should assume that it was the duty of the buyer to furnish the cars. That such notice was given is not claimed by appellant.

[3] Where, under a contract, the vendor reserves unto himself the option of delivering the goods sold to the vendee on board a vessel or the cars of a railroad company, upon any one of 5 days, or any one of 15 days, assuming that it is the duty of the vendee to furnish the vessel or cars, the vendor is obligated to notify the vendee at what time he proposes to deliver the goods. Brooklyn Oil Refinery v. Brown, 38 How. Prac. (N. Y.) 444; Ketcham v. Hiller, 48 Barb. (N. Y.) 596; Dwight v. Eckert, 117 Pa. 490, 12 Atl. 22.

For the reasons stated, the judgment will be affirmed; and it is so ordered.

HANNA and PARKER, J.J., concur.

### ON MOTION TO DISMISS MOTION FOR REHEARING.

ROBERTS, C. J.—On the 2d day of June, 1916, appellant, by his attorney, filed a motion for rehearing herein, in which he contends that the former opinion filed by the court is not in harmony with the correct interpretation of the authorities cited by the court in support thereof, and, further, that it was unfair to appellant for the appellate court to affirm the judgment of the lower court upon a theory which the ruling of the trial court precluded from consideration, and, in order to so decide, to assume that the appellees introduced evidence not contained in the record, which would have supported the opinion upon such theory, and, further, that the appel-

lant not having delivered the lambs and ewes before the last day of the time within which he had the opportunity of so delivering was equivalent to notice to the appellees that he had elected to deliver on the last day.

[2] Appellees have moved to dismiss the motion for rehearing filed, on the ground that the original judgment against the appellant was fully discharged and paid by appellant before the filing of the motion for rehearing, and that such payment was voluntary. The motion to dismiss is accompanied by a certificate of the clerk of the district court of Bernalillo county, showing full payment of the judgment, and it is further shown in the motion that appellees have executed to appellant a full release and discharge from such judgment.

Appellant contends that the motion for rehearing should not be dismissed because under the majority rule even a voluntary compliance with the judgment or decree of the court by payment or performance is no bar to an appeal or writ of error for its reversal, particularly where repayment or restitution may be enforced, or the effect of compliance may be otherwise undone, in case of reversal. In support of this contention he cites 3 C. J. p. 675; Lott v. Davis, 262 Ill. 148, 104 N. E. 199; Dakota County v. Glidden, 113 U. S. 222, 5 Sup. Ct. 428, 28 L. Ed. 981; Erwin v. Lowry, 7 How. 172, 12 L. Ed. 655; O'Hara et al. v. McConnell, 93 U. S. 150, 23 L. Ed. 840; Patterson v. Keeney, 165 Cal. 465, 132 Pac. 1043, Ann. Cas. 1914D, 232.

It must be conceded that the weight of authority is to the effect that a judgment debtor does not waive the right to appeal and to reverse the judgment for error by paying the amount thereof, either before or after taking his appeal, no matter whether the payment is made before or after execution has issued and been served upon him. This is so because the judgment creditor has the right and power to issue execution to enforce the judgment or decree, and the judgment debtor by paying and discharging the judgment presumably does not do so voluntarily, but is coerced into paying the same. That this is true is

shown by an excerpt from 2 Freeman on Judgments, §
480a, quoted in appellant's brief, in which it is said:

"The better rule we think is, that though execution has
not issued, the payment of a judgment must be regarded as
compulsory, and therefore as not releasing errors nor depriv-
ing the payor of the right to appeal."

In each of the cases cited by appellant payment was
made on the judgment, while the judgment debtor had
the right to cause execution to be issued and enforce its
collection. These cases are all distinguishable from the
present case because here appellant, when he took his
appeal, executed a supersedeas bond under the provisions
of section 16, c. 77, Laws 1915, by which act on his part
the efficacy of the judgment was suspended; hence ap-
pellees were powerless to cause execution to be issued on
the judgment and enforce the collection of the amount
called for thereby.

These facts are somewhat similar to those in the Colo-
rado case of Bull et al. v. Doss Bros. Electric Construc-
tion Co., 51 Colo. 459, 119 Pac. 156. There the defend-
ant in error recovered judgment against the plaintiffs
in error, and, in order to make the same a lien upon the
real property of the judgment debtors, caused a transcript
of the docket entry of such judgment to be filed with the
recorder of the city and county of Denver, as provided
by the Colorado statute. Thereafter the judgment debt-
ors, plaintiffs in error, took the cause to the Supreme Court
for review, applied for and secured a supersedeas, staying
the execution of the judgment. Thereafter, and prior to
a decision of the case in the Supreme Court, plaintiffs in
error paid the judgment and had the same satisfied of
record. The court held that such payment was voluntary,
and that the writ must be dismissed.

One of the early leading cases on the effect of the pay-
ment of the judgment before execution issued upon the
right of appeal is that of Richeson v. Ryan, 14 Ill. 74, 56
Am. Dec. 493. There Ryan recovered a judgment against
Richeson. The latter paid the judgment before execution
issued, and then sued out a writ of error to reverse it.

The court states the question, "Did the payment operate as a release of errors," and then proceeds: ·

"If the judgment had been collected by execution, there would not be a doubt of the right of Richeson to prosecute the writ of error. A payment made under such circumstances would be compulsory, and would not preclude him from afterwards reversing the judgment, if erroneous, and then maintaining an action to recover back the amount paid. The payment in question must equally ·be considered as made under legal compulsion."

The court held that by so paying he did not waive his right to appeal or prosecute error. We believe, from an examination of the authorities, that the correct determination of the question depends upon whether the payment of the judgment is under legal compulsion; that is, assuming that payment is made prior to. the issuance of execution, that such payment is regarded as having been been compulsory by reason of the right existing in the judgment creditor to have issued execution and to have enforced payment at the time payment is made. It is well settled that:

"If a person voluntarily acquiesces in, or recognizes the validity of a judgment, order, or decree, or otherwise, takes a position which is inconsistent with the right to appeal therefrom, he thereby impliedly waives his right to have such judgment, order, or decree reviewed by an appellate court." 3 C. J. p. 665, § 536.

The reason for the majority rule which recognizes the right of appeal, even though the judgment be paid without execution, is that, the judgment debtor having the power to coerce payment, the payment by the judgment creditor without execution is not a voluntary acquiescence in, or recognition of, the judgment.

Here the appellees were powerless to issue execution, or in any other manner to compel payment of the judgment, notwithstanding which the appellant voluntarily paid the the full amount of the judgment. Under these circumstances we believe that the payment amounted to a voluntary acquiescence in and recognition of the validity of the judgment which precludes him from seeking further

relief therefrom in this court; hence we must hold that, where a party appeals from a judgment adverse to him in the district court and executes a supersedeas bond which stayed and suspended all proceedings under such judgment, and preserved the status quo pending the determination of the appeal and prior to a final determination of the appeal, such party voluntarily pays and satisfies such judgment; such payment amounts to a voluntary acquiescence in and recognition of the validity of such judgment, and estops appellant from further prosecuting his appeal. Hence the motion for rehearing must be dismissed; and it is so ordered.

HANNA and PARKER, J.J., concur.